[No. G038366. Fourth Dist., Div. Three. May 28, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN EUGENE LOGSDON, Defendant and Appellant.

## Counsel

Andrew E. Rubin, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SILLS, P. J.**—Brian Eugene Logsdon appeals from the judgment following his guilty plea to driving under the influence of alcohol *and* drugs as a felony after three previous convictions for the same offense.[1] (See Veh. Code, §§ 23152, subd. (a), 23550.) He received the bargained-for low term of 16 months in prison.[2] On appeal, he contends the court erred when it denied his motion to suppress evidence, after which he changed his plea. We affirm.

### FACTS

The facts presented at the suppression motion hearing were limited to those supporting the initial detention, as follows:

Anaheim Police Officer Daniel Lambaren was on duty about 1:20 a.m. when he observed Logsdon driving a Mustang. Although there was very little, if any, traffic on the street, Lambaren noticed the Mustang because it emerged from a gas station, crossed all but one lane of a seven-lane boulevard and proceeded to drive forward in the middle lane. Lambaren was in his patrol car, following the Mustang in the same lane. After about 100 feet, the Mustang moved from the middle lane to the far right lane without signaling. Lambaren ordered the car to stop due to the violation of Vehicle Code section 22107.[3]

---

[1] Originally, Logsdon faced charges of possessing less than an ounce of marijuana (Health & Saf. Code, § 11357, subd. (b)), but this additional charge was dismissed when he changed his plea to the main charge.

[2] As Logsdon has informed us in his brief, he has completed his incarceration and is presently on parole.

[3] Vehicle Code section 22107 provides that no one "shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then *only after the giving of an appropriate signal* in the manner provided in this chapter in the event any other vehicle may be affected by the movement." (Italics added.)

After the suppression motion was denied, Logsdon changed his plea to guilty, stating on his change of plea form that he "unlawfully drove a vehicle while under the influence of alcohol/drugs," that he had three prior convictions for the same offense, and that he "refused to complete a chemical request to determine my BAC [blood alcohol concentration]."

## DISCUSSION

### Lawful Detention

Logsdon contends Lambaren unlawfully stopped and detained him. He characterizes the lane change as one not requiring a signal because there was no other traffic which would have been affected by the lane maneuver. Thus, no signal was needed to change lanes in a safe manner, and no violation of the Vehicle Code was committed.

■ The standard to review the denial of a suppression motion is well settled. We must defer to the trial court on all its factual findings if they are supported by substantial evidence. Once the facts are determined, we then decide de novo whether the search or seizure was reasonable under established constitutional principles. (See *People v. Ayala* (2000) 24 Cal.4th 243, 279 [99 Cal.Rptr.2d 532, 6 P.3d 193].) The constitutional principle in this case is that a "detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].)

■ Logsdon characterizes the situation in which Lambaren stopped him as a safe lane change because there were no other cars that could possibly have been affected by it. As a signal is only a prerequisite to a lane change if another motorist could be affected—see *Stephens v. Hatfield* (1963) 214 Cal.App.2d 140, 144 [29 Cal.Rptr. 436]—Logsdon argues that Lambaren improperly stopped him. Although the axiom may be correct, it does not avail him in the overall argument because *Lambaren* was affected by the lane change. He was directly behind Logsdon, in the same lane and within 100 feet of him. ■ As established in *People v. Miranda* (1993) 17 Cal.App.4th 917 [21 Cal.Rptr.2d 785], a signal is primarily aimed at vehicles behind the car making the lane change. That even applies to a patrol car, irrespective of the lack of any other traffic.[4] (*Miranda*, at p. 930.)

---

[4] In *Miranda*, the distance between Miranda's car and the officer's car was never established. (*People v. Miranda, supra,* 17 Cal.App.4th at p. 921.) However, by failing to signal before turning, the lane change was "prima facie unsafe . . . ." (*Id.* at p. 930.)

■ Logsdon argues that the holding of *Miranda* did not involve the issue of the detention due to the lane change. Instead, he characterizes the case as a rejection of an officer's use of a traffic stop as a pretext to search for evidence of some crime, i.e., a fishing expedition. However, the *Miranda* court analyzed the justification for the traffic stop under Vehicle Code section 22107 *first* to ensure the officer was acting properly in making a stop at all. "[T]he inquiry focuses on whether the officer was legally authorized to make an arrest and conduct a search. If, in the abstract, the officer does no more than he or she is legally permitted to do, regardless of the subjective intent with which it was done, the arrest and search are objectively reasonable . . . ." (*People v. Miranda, supra*, 17 Cal.App.4th at pp. 922–925.)

Once this issue was addressed, Miranda responded that the officer "did not testify that [the driver's] unsignalled left turn was actually unsafe or that there was any other traffic around." (*People v. Miranda, supra*, 17 Cal.App.4th at p. 930.) These points were deemed irrelevant. The court noted that the driver "might not have been driving in an obviously dangerous manner," but the stop for the unsignaled lane change was proper nonetheless because "the failure to properly signal where another 'may be affected by the movement' is prima facie unsafe, for it creates the possible danger the statute was designed to prevent. Moreover, *defendant is mistaken that there was no other traffic around.* [The] *Officer* . . . was behind [the driver], and the primary benefit of the signal requirement is for the vehicles to the rear of the signaling vehicle. [Citation.]" (*Ibid.*, italics added.) Thus, Miranda's argument was rejected.

Logsdon counters with the allegation that Lambaren's car was too far away to be affected by the lane change at all. He extrapolates that the distance was commensurate with the distance between "home and first base" or "seven full car lengths behind." He emphasizes that Lambaren was not affected by the change as evidenced by his not braking or swerving. Thus, there was no necessity for Logsdon to signal before moving into the adjacent lane.

■ Actual impact is not required by the statute; potential effect triggers the signal requirement. (See Veh. Code, § 22107 ["in the event any other vehicle *may be* affected . . . ." (italics added)].) The trial court *found* that a vehicle within 100 feet of Logsdon's car, traveling in the same lane and at the same speed, *was* affected by the lane change. Moreover, the Legislature has declared its opinion that vehicle signals are needed within 100 feet of any turn. (See Veh. Code, § 22108.) Whether this finding is a discretionary finding or a finding of fact, we must accept this one. Factual findings are to be accepted if substantial evidence can be found in the record to support them (see *People v. Ayala, supra*, 24 Cal.4th at p. 279), and discretionary rulings must be upheld unless an abuse of that discretion is shown. (See *People v. Bishop* (1993) 14 Cal.App.4th 203, 212–213 [17 Cal.Rptr.2d 657] [abuse of

discretion standard appropriate when lower court "is in the best position to determine the genuineness and effectiveness of the showing . . . ."].) Under either standard, we must accept this finding.

In this case, changing from the middle lane to the far right lane without signaling could have affected the sole driver traveling behind Logsdon. The lack of a signal *could* have been due to the driver's drifting into the lane without intending to do so, with the possible result of a very sudden overcorrection upon the error's discovery. Or, the driver could have unknowingly changed lanes due to a sudden illness or sleepiness. The failure to signal would have left *any* driver proceeding behind him in bewilderment as to what to *expect* because it was impossible to discern the initial driver's intent in changing lanes. The purpose of the signaling requirement is to *inform* other drivers what the initial driver intends and thus, provide them with an indication as to his or her future course. Without such an indication, a driver is bereft of necessary information by which preparations can be made to drive safely.

Moreover, the question is not whether Logsdon *actually* violated the statute. Rather, the issue was if some "objective manifestation" that the person *may* have committed such an error was present. (See *People v. Souza, supra,* 9 Cal.4th at p. 231.)

Logsdon replies that language in *In re Jaime P.* (2006) 40 Cal.4th 128 [51 Cal.Rptr.3d 430, 146 P.3d 965] intimates that there *must* be at least one vehicle *actually* affected by the lane change to trigger application of the statute: "The officer first observed the driver of the car turn corners without signaling and then pull over to the curb, again without signaling. (The People conceded these violations standing alone would not have justified a vehicle stop, as no other vehicles were affected . . . .)" (*Id.* at p. 131, citation omitted.) We disagree with this characterization of the two sentences.

First and foremost, the actual language in Vehicle Code section 22107 is clear and unambiguous. Its provisions apply to any vehicle which "*may* be affected," not only to vehicles actually affected. (Veh. Code, § 22107, italics added.)

Second, the language excerpted from *Jaime P.* was not at all relevant to the holding of its opinion. The holding was whether the prosecution could rely on a juvenile's probationary search condition when the officers conducting the search were personally unaware of it. (See *In re Jaime P., supra,* 40 Cal.4th at p. 130.) Moreover, the specific language was conclusory and not factual: The phrase was a mere summary of certain facts not relevant to the holding but of general interest to the reader. Such dictum fails to *prove* that no vehicles were

affected or that the statute had been judicially altered to require actual effect. It reflects only that the parties agreed to a summary of the facts which the court then paraphrased in that fashion.

In our independent assessment, the motion was properly denied. We therefore affirm the judgment.

Rylaarsdam, J., and Bedsworth, J., concurred.