[No. A131004. First Dist., Div. Five. Apr. 19, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY LEON DURANT, Defendant and Appellant.

COUNSEL

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Stan Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NEEDHAM, J.**—During a traffic stop for failure to signal a left turn, police discovered that appellant Anthony Leon Durant was carrying a loaded handgun despite his status as a convicted felon currently on probation. After the court denied his motion to suppress evidence under Penal Code section 1538.5, appellant pled no contest to a single count of firearm possession by a felon, admitted a prior conviction allegation under the "Three Strikes" law, and was placed on felony probation after the trial court struck the "strike." (Pen. Code, former § 12021, subd. (a)(1); *id.*, § 1170.12; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].) We affirm the judgment, rejecting appellant's claim that the court should have granted his motion to suppress.

## I. BACKGROUND

The following evidence was adduced at the suppression hearing:

Shortly after midnight on June 19, 2010, appellant was stopped by a San Mateo Gang Task Force unit for a traffic violation in the area of Bayshore Boulevard and Carter Avenue. He was driving a black Pontiac and had three passengers in his car. Daly City Police Officers Taylor and Miller, along with Millbrae Police Sergeant Fregosi, formed another task force unit that assisted in the stop. Taylor learned from dispatch during the stop that appellant was on probation subject to search conditions. Appellant and his passengers were not taken into custody.

The following evening, Officers Taylor and Miller went on task force patrol with Sergeant Fregosi not far from the location where appellant had

been stopped the night before. About 10:55 p.m., Taylor was driving the patrol car northbound on Bayshore Boulevard and saw a black Pontiac that was travelling in front of them pull into the dedicated left-turn lane at the intersection at Guadalupe Canyon Parkway. Appellant was driving the Pontiac, though Taylor did not initially recognize him from their contact the previous evening. Appellant stopped at the red turn arrow for over 30 seconds and made a left turn onto westbound Guadalupe when the light changed to a green arrow, but at no time did he activate the car's turn signal. Several vehicles that were travelling southbound on Bayshore stopped at the intersection as appellant began making the left turn; one of these vehicles was in the right-turn lane.

Officer Taylor believed that the failure to signal was a violation of Vehicle Code section 22108,[1] which provides, "Any signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning." He activated the patrol car lights to initiate a traffic stop. Although Taylor had not recognized appellant up until that point, immediately after he turned on the lights Officer Miller reminded him that the driver was the person who had been stopped by task force officers earlier that day. Taylor then recognized appellant and the car.

After appellant pulled over, Officer Taylor approached on the driver's side and the other officers approached on the passenger's side. Taylor asked appellant if he had his driver's license and appellant said no; Taylor asked appellant whether he was still on probation and appellant said yes. Appellant denied having anything illegal and gave Taylor consent to search him and his car. Taylor performed a patdown for weapons and found a loaded handgun in appellant's waistband.

Defense counsel argued that the traffic stop was an illegal seizure under the Fourth Amendment because the Vehicle Code did not require appellant to signal while in a dedicated left-turn lane and Officer Taylor did not have a reasonable suspicion that a traffic violation had occurred. The prosecution responded that the stop was proper because vehicles travelling in the other direction were stopped at the light and section 22107 requires "the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement." The prosecution also noted that by the time of the search, Officer Taylor knew that appellant was on probation subject to search conditions.

---

[1] Further statutory references are to the Vehicle Code unless otherwise indicated.

The trial court denied the motion to suppress. It took judicial notice that at the time of the traffic stop, appellant was on felony probation in a prior burglary case, and that a condition of his probation required him to "submit to search and seizure of his person, place of residence, or area under his control, or his vehicle by any probation officer or peace officer." The court agreed with defense counsel that "no signal was required by [appellant] and that a traffic stop under these circumstances [wasn't] supported by the code," but it concluded that the patdown search was authorized by the conditions of appellant's probation. The court found that the officers did not act in an arbitrary, capricious or harassing way in conducting the probation search; hence, suppression of the gun was not required.

## II. STANDARD OF REVIEW

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) In cases where the facts are essentially undisputed, we independently determine the constitutionality of the challenged search or seizure. (*People v. Balint* (2006) 138 Cal.App.4th 200, 205 [41 Cal.Rptr.3d 211].) The trial court's ruling may be affirmed if it was correct on any theory, even if we conclude the court was incorrect in its reasoning. (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529 [40 Cal.Rptr.3d 422].)

## III. DISCUSSION

Appellant argues that his motion to suppress should have been granted because the traffic stop was illegal and the patdown leading to the discovery of the gun was the product of that unlawful detention. He contends the probation search condition cannot be used to validate the patdown because the officer was unaware of that condition when he first initiated the traffic stop. The People respond that the traffic stop was lawful and the patdown was independently authorized by appellant's probation search condition.

### A. *Legality of Traffic Stop*

■ " 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' " (*People v. Hernandez* (2008) 45 Cal.4th 295, 299 [86 Cal.Rptr.3d 105, 196 P.3d 806].)

Traffic stops are investigatory detentions that must be supported by a reasonable suspicion of a Vehicle Code violation or other criminal activity; the probable cause necessary for an arrest is not required. (*Ibid.*; *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408 [89 Cal.Rptr.3d 135]; *People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1148–1149 [49 Cal.Rptr.3d 811].)

■ Officer Taylor detained appellant because he failed to signal his left turn from Bayshore Boulevard onto Guadalupe Canyon Parkway. Section 22107 provides, "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected . . . ." Section 22108 directs that "[a]ny signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning." Sections 22107 and 22108 must be read together to mean that "a motorist must continuously signal during the last 100 feet traveled before turning, but only in the event other motorists may be affected." (*People v. Carmona* (2011) 195 Cal.App.4th 1385, 1394 [124 Cal.Rptr.3d 819].) Actual impact upon another motorist is not required; a potential effect is sufficient to trigger the signal requirement. (*People v. Logsdon* (2008) 164 Cal.App.4th 741, 745 [79 Cal.Rptr.3d 379] (*Logsdon*).)

■ The trial court concluded that appellant did not violate sections 22107 and 22108 because none of the other motorists that were stopped at the intersection were potentially affected by his left turn on a green arrow. When assessing the reasonableness of a traffic stop, the question is not whether appellant *actually* violated the Vehicle Code, but whether there was some " 'objective manifestation' that [he] *may* have" violated the Vehicle Code. (*Logsdon, supra,* 164 Cal.App.4th at p. 746.)

Appellant suggests that the stop was unreasonable because it was based on a mistake of law by Officer Taylor. He relies on our decision in *People v. White* (2003) 107 Cal.App.4th 636 [132 Cal.Rptr.2d 371] (*White*), in which a California Highway Patrol officer stopped a car with only one Arizona license plate affixed, mistakenly believing that two plates were required under the Vehicle Code. (*Id.* at p. 643.) We concluded that a mistake of law, though made in good faith, could not supply the reasonable suspicion necessary to justify a traffic stop. (*Id.* at p. 644; accord, *People v. Reyes* (2011) 196 Cal.App.4th 856, 863 [127 Cal.Rptr.3d 167].) Conversely, " 'an officer's mistaken factual belief, held reasonably and in good faith, can provide reasonable suspicion for a traffic stop.' " (*White, supra,* 107 Cal.App.4th at p. 644, citing *U.S. v. Twilley* (9th Cir. 2000) 222 F.3d 1092, 1096, fn. 1.)

Ultimately, we need not determine whether Officer Taylor made a mistake of fact or law, or whether the facts known to him gave rise to a reasonable suspicion that appellant committed a Vehicle Code violation by failing to signal. As we shall explain, the patdown was authorized by appellant's probation search condition, even if it occurred during a detention that was otherwise unlawful.

### B. *Probation Search Condition*

■ Probationers in California typically consent in advance to warrantless searches as a condition of probation, in exchange for the opportunity to avoid a prison sentence. (*People v. Medina* (2007) 158 Cal.App.4th 1571, 1575–1576 [70 Cal.Rptr.3d 413].) Such consent operates as a " 'complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner.' " (*Id.* at p. 1576.) Because a probationer subject to a search condition lacks a reasonable expectation of traditional Fourth Amendment protections, a police officer may search him or her without any reasonable suspicion of criminal activity, so long as the search is not undertaken for harassment or for arbitrary or capricious reasons or in an unreasonable manner. (158 Cal.App.4th at pp. 1576–1577.)

■ As appellant points out, a police officer who relies on a probation condition to justify an otherwise illegal search or seizure must know of that condition when he acts, and may not rely on subsequently acquired information about the person's probationary status. (*People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1184 [16 Cal.Rptr.3d 258]; see also *In re Jaime P.* (2006) 40 Cal.4th 128, 130, 132–139 [51 Cal.Rptr.3d 430, 146 P.3d 965] [police must have advance knowledge of a juvenile's probationary search term]; *People v. Sanders* (2003) 31 Cal.4th 318, 332 [2 Cal.Rptr.3d 630, 73 P.3d 496] [search may not be justified by adult parolee's search condition unless officer was aware of that condition when the search was conducted].) Officer Taylor was aware of appellant's probationary search conditions before he initiated the traffic stop, though he did not recognize appellant until immediately after he activated the patrol car's lights.

Appellant argues that Officer Taylor's failure to recognize him before he decided to make the stop precludes the prosecution from relying upon the search condition to uphold the subsequent patdown search and seizure of the gun. He reasons that Taylor was not aware of the search condition when he undertook what would otherwise be an illegal traffic detention because he did not know the driver of the Pontiac was appellant, a person who was on probation and subject to that search condition. Appellant contends that the discovery of appellant's search condition, like the discovery of the gun itself,

was the product of the illegal stop. (*Wong Sun v. United States* (1963) 371 U.S. 471, 487–488 [9 L.Ed.2d 441, 83 S.Ct. 407] (*Wong Sun*).)

■ The exclusionary rule extends to the "fruits" of an illegal search or seizure, but not all evidence is " 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." (*Wong Sun, supra*, 371 U.S. at p. 488.) " '[E]xclusion may not be premised on the mere fact that a constitutional violation was a "but-for" cause of obtaining evidence.' " (*People v. Brendlin* (2008) 45 Cal.4th 262, 268 [85 Cal.Rptr.3d 496, 195 P.3d 1074] (*Brendlin*), quoting *Hudson v. Michigan* (2006) 547 U.S. 586, 592 [165 L.Ed.2d 56, 126 S.Ct. 2159].) Exclusion is *not* required where the connection to the original illegality has become so attenuated or has been interrupted by some intervening circumstance so as to remove the taint. (*Brendlin*, at p. 268.)

■ In determining whether appellant's search condition attenuated any illegality in the traffic stop, we are guided by *Brendlin, supra*, 45 Cal.4th at page 262. There, the California Supreme Court held that the exclusionary rule did not require the suppression of evidence seized during a search incident to a lawful arrest when the officers had discovered the arrest warrant during an unlawful traffic detention. (*Id.* at p. 265.) In so concluding, the court applied the well-accepted framework for analyzing an attenuation claim: " '[T]he question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the "taint" imposed upon that evidence by the original illegality.' [Citation.] 'Relevant factors in this "attenuation" analysis include the temporal proximity of the Fourth Amendment violation to the procurement of the challenged evidence, the presence of intervening circumstances, and the flagrancy of the official misconduct.' " (*Id.* at p. 269.) Applying these three factors, the court in *Brendlin* concluded "that the outstanding warrant, which was discovered prior to any search of defendant's person or of the vehicle, sufficiently attenuated the taint of the unlawful traffic stop." (*Id.* at pp. 269–270.)

■ As to the first factor of the analysis—temporal proximity—the court in *Brendlin* acknowledged that only a few minutes had elapsed between the unlawful traffic stop and the search incident to arrest that uncovered the challenged evidence. (*Brendlin, supra*, 45 Cal.4th at p. 270.) It observed that temporal proximity between those two events is most relevant when the alleged attenuating factor was a volitional act by the defendant, such as resisting arrest or flight, because in such cases a brief lapse of time makes it more likely the search was the product of the detention itself. (*Ibid.*) "Conversely, when the intervening circumstance is a lawful arrest under an outstanding arrest warrant, the defendant's conduct is irrelevant, and the

police cannot be said to have exploited the illegal seizure that preceded the discovery of the outstanding warrant." (*Ibid.*)

In any event, under the second factor of the attenuation analysis, an arrest under an outstanding warrant is an intervening circumstance that tended to dissipate the taint of an unlawful traffic stop. (*Brendlin, supra*, 45 Cal.4th at p. 271.) The court in *Brendlin* noted that the defendant in that case had not been searched until the officers had confirmed the existence of the warrant, and that the evidence seized was a fruit of that warrant rather than the initial traffic stop. (*Ibid.*) Finally, the third factor in determining attenuation—the flagrancy and purposefulness of the police misconduct—did not favor suppression when the illegal conduct arose from a mistake about traffic laws. (*Id.* at pp. 271–272.)[2]

■ Applying the factors used by the *Brendlin* court to the case before us, we conclude that any illegality in the initial traffic detention was attenuated by appellant's probation search condition. Although the patdown search and discovery of the gun occurred shortly after the traffic detention, they did not occur until after Officer Taylor had recognized appellant as a person subject to a search condition. (*Brendlin, supra*, 45 Cal.4th at pp. 270–271.) The search condition supplied legal authorization to search that was completely independent of the circumstances leading to the traffic stop. (*Id.* at p. 271.) Nor is there any flagrancy or purposefulness to the alleged unlawful conduct by Taylor—though the trial court found that the traffic stop was made without reasonable suspicion, it specifically found Taylor did not act in an arbitrary, capricious, or harassing manner. (*Id.* at pp. 271–272.)

The purpose of the exclusionary rule—deterring police misconduct—is not served by suppressing the gun that was seized simply because Officer Taylor did not recognize appellant as a probationer until immediately after he initiated a traffic stop made in good faith. (Contra, *People v. Wilkins* (1986) 186 Cal.App.3d 804, 807, 812 [231 Cal.Rptr. 1] [taint of illegal detention not purged when officer first learned of probation condition during detention].) Because Taylor was aware of appellant's probation condition before the search, and because the existence of that probation condition dissipated any taint that might flow from the detention, the motion to suppress was properly denied.

---

[2] The defendant in *Brendlin* was also on parole, but the court did not consider whether the search was authorized by the conditions of his parole because the officer never relied on a parole search condition and no search occurred until after the outstanding warrant was discovered. (*Brendlin, supra*, 45 Cal.4th at pp. 272–273.) The court noted, however, that the reasonableness of a search must be determined based upon " ' "circumstances *known to the officer when the search is conducted.*" ' " (*Id.* at p. 273.)

## IV.  DISPOSITION

The judgment is affirmed.

Simons, Acting P. J., and Bruiniers, J., concurred.