Filed 6/17/13  P. v. Brown CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>DONALD RAY BROWN,<br><br>      Defendant and Appellant. | C071109<br><br>(Super. Ct. No. 05F07166) |

Following an unsuccessful Penal Code section 1538.5 motion to suppress evidence essential to his conviction, defendant Donald Ray Brown pled no contest to driving with a blood-alcohol concentration of 0.08 percent or higher (Veh. Code, § 23152, subd. (b))[1] and admitted he had five prior convictions for driving under the influence.  On appeal, he claims the trial court erred in denying his motion to suppress.  Under the totality of the circumstances in this case, we find the officer reasonably suspected defendant had violated the Vehicle Code.

---

[1]      Undesignated statutory references are to the Vehicle Code.

BACKGROUND

Because the sole issue on appeal is the denial of the motion to suppress, we summarize the facts as adduced at that hearing.

On May 1, 2005, at 2:12 a.m. Officer Gary Hirdler was driving east on La Riviera Boulevard. Officer Hirdler was driving approximately one to two car lengths behind a Dodge Neon, close enough to be able to read the license plate and see all the occupants of the Neon. As they approached the intersection, the Neon was traveling in the left-most portion of the lane when the driver of the Neon made an abrupt right-hand turn without signaling. Officer Hirdler considered the turn unsafe and a violation of the Vehicle Code, so he initiated a traffic stop for making an unsafe turn in violation of sections 22107 and 22108. The Neon accelerated before pulling over to the right side of the road and stopped with the right front tire partially on the sidewalk. Officer Hirdler illuminated the vehicle and saw the driver jump into the backseat and the passenger move to the driver's seat. Officer Hirdler spoke to the woman sitting in the driver's seat, Christine Bufford, who told him her boyfriend (defendant) had been driving. She informed Officer Hirdler they had switched seats because defendant did not have a driver's license. Officer Hirdler spoke with defendant and "smelled the fruits of an alcoholic beverage emanating from his person." In addition, defendant's eyes were bloodshot and watery, his speech was slurred and he was unsteady on his feet. Defendant denied driving and refused to answer questions. In general, he was agitated and uncooperative. Officer Hirdler administered a breath test, which showed a 0.16 percent blood-alcohol level. Because seven years had passed between the traffic stop and the suppression hearing, Officer Hirdler did not independently recall any additional details of the stop.

Defendant was charged with driving under the influence of alcohol with three or more prior drunk driving convictions within 10 years (§ 23152, subd. (a); count 1), driving while having a 0.08 percent or more blood-alcohol level with three or more prior drunk driving convictions within 10 years (§ 23152, subd. (b); count 2), and driving on a

2

suspended license (§ 14601.2, subd. (a); count 3). As to counts 1 and 2, it was further alleged defendant had sustained five prior convictions for driving under the influence, and as to count 3 it was further alleged defendant had sustained two prior convictions for driving on a suspended license.

Defendant filed a motion to suppress evidence under Penal Code section 1538.5. Following a contested hearing, the trial court denied the motion. Defendant then pled no contest to count 2 and admitted the five prior convictions. In exchange, he was granted five years' formal probation, conditioned on serving one year in county jail and the remaining counts were dismissed.

DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress, as the initial detention was unlawful. Defendant also contends there was no traffic violation as there was no evidence he performed an unsafe turn and his failure to signal the turn did not actually or potentially affect other drivers. We disagree.

The standard of review of the denial of a suppression motion is well settled. We defer to the trial court's factual findings if they are supported by substantial evidence. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.) "Once the facts are determined, we then decide de novo whether the search or seizure was reasonable under established constitutional principles." (*People v. Logsdon* (2008) 164 Cal.App.4th 741, 744 (*Logsdon*).) All presumptions favor the trial court's exercise of its power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences, " 'and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597, quoting *People v. Lawler* (1973) 9 Cal.3d 156, 160.)

"[A]n officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.] The guiding principle in determining the

3

propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case. [Citations.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1082-1083.) An ordinary traffic stop is treated as a detention and is reasonable under the Fourth Amendment "only if the facts and circumstances known to the officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or some other law." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926 (*Miranda*).) " 'If the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation. [Citations.]' [Citation.]" (*In re Justin K*. (2002) 98 Cal.App.4th 695, 700.) "When assessing the reasonableness of a traffic stop, the question is not whether appellant actually violated the Vehicle Code, but whether there was some ' "objective manifestation" ' that [he] may have' violated the Vehicle Code. [Citation.]" (*People v. Durant* (2012) 205 Cal.App.4th 57, 63, italics omitted.)

Section 22107 provides, "[n]o person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal . . . in the event any other vehicle may be affected by the movement." Section 22108 clarifies that "[a]ny signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning." "Sections 22107 and 22108 must be read together to mean that 'a motorist must continuously signal during the last 100 feet traveled before turning, but only in the event other motorists may be affected.' (*People v. Carmona* (2011) 195 Cal.App.4th 1385, 1394.) Actual impact upon another motorist is not required; a potential effect is sufficient to trigger the signal requirement. [Citation.]" (*People v. Durant, supra,* 205 Cal.App.4th at p. 63.)

4

In denying the motion to suppress, the trial court implicitly found defendant's abrupt turn was unsafe and that a signal was required as the turn might have affected Officer Hirdler. There is substantial evidence supporting these findings. "The purpose of the signaling requirement is to inform other drivers what the initial driver intends and thus, provide them with an indication as to his or her future course. Without such an indication, a driver is bereft of necessary information by which preparations can be made to drive safely." (*Logsdon, supra,* 164 Cal.App.4th at p. 746.) This is a particularly important purpose when driving at 2:00 a.m., as darkness reduces vehicle visibility to other motorists. The primary beneficiaries of the signal requirement are drivers of cars behind the signaling vehicle. (*Miranda, supra,* 17 Cal.App.4th at p. 930; see also *Logsdon*, *supra,* 164 Cal.App.4th at p. 744.) An officer driving a patrol car is included among the intended beneficiaries of the signal requirement, whether or not there is other traffic. (*Logsdon*, *supra* 164 Cal.App.4th at p. 744.) It is a reasonable inference that Officer Hirdler, driving closely behind defendant and in the same lane, in the dark hours of the morning might be affected by an abrupt right turn without a signal.

Contrary to defendant's argument, it was not necessary to establish the exact distance between defendant and Officer Hirdler as they were driving down the street. "Under Vehicle Code section 22107, the failure to properly signal where another 'may be affected by the movement' is prima facie unsafe, for it creates the possible danger the statute was designed to prevent." (*Miranda, supra,* 17 Cal.App.4th at p. 930.) Officer Hirdler also testified he considered the turn defendant made unsafe; this is substantial evidence supporting the trial court's implicit findings.

Accordingly, defendant was properly detained because the facts and circumstances known to Officer Hirdler supported at least a reasonable suspicion that defendant violated the Vehicle Code by making an unsafe turn.

DISPOSITION

The judgment is affirmed.

                                                                   BLEASE              , J.

We concur:

     RAYE                , P. J.

     NICHOLSON        , J.