Filed 2/18/16  P. v. Dibble CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE, | F069344 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RF006787A) |
| AARON MICHAEL DIBBLE, | **OPINION** |
| Defendant and Appellant. | |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush and Colette M. Humphrey, Judges.†

Jesse Whitten for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Kane, Acting P.J., Peña, J. and Smith, J.

†       Judge Bush presided over appellant's motion to suppress.  Judge Humphrey sentenced appellant.

Appellant Aaron Michael Dibble pled no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and admitted allegations that he had a prior conviction within the meaning of the three strikes law (Pen. Code, § 667, subds. (b)-(i)).

On appeal, Dibble challenges the trial court's denial of his suppression motion. We affirm.

**FACTS**

On September 10, 2013, Dibble was driving a car in Ridgecrest, California with a child in a car seat in the rear when he was stopped by Ridgecrest Police Sergeant Justin Dampier. Sergeant Dampier noticed that Dibble was exhibiting symptoms of being under the influence of a stimulant. He searched Dibble's car and found the plunger of a hypodermic needle syringe and a bent metal spoon. A second officer searched Dibble and found the cap to a syringe. Dibble was arrested and transported to the police station. When Dibble removed his shoes and socks at the station, a small black bag containing 0.3 grams of methamphetamine fell out of one of his socks.

On November 13, 2013, the district attorney filed an information charging Dibble with bringing a controlled substance into the jail (count 1/Pen. Code, § 4573), transportation of methamphetamine (count 2/Health & Saf. Code, § 11379, subd. (a)), being under the influence of methamphetamine (count 3/Health & Saf. Code, § 11550, subd. (a)), and misdemeanor endangering a child (count 4/Pen. Code, § 273a, subd. (b)). The information also alleged a prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) and that Dibble had a prior conviction within the meaning of the three strikes law.

Around December 26, 2013, Dibble filed a motion to suppress that, in pertinent part, challenged his detention. On January 27, 2014, after a hearing, the court denied the motion.

On March 14, 2014, after the prosecutor amended the information to add a charge of possession of methamphetamine (count 5), Dibble pled no contest to that count and admitted the three strikes allegation in exchange for a stipulated sentence of 32 months and the dismissal of the remaining counts and allegations.

On April 15, 2014, the court sentenced Dibble, in accord with his plea bargain, to a 32-month prison term, the mitigated term of 16 months on his possession of methamphetamine conviction, doubled to 32 months because of his prior strike conviction.

***The Hearing on Dibble's Motion to Suppress***

At a hearing on Dibble's suppression motion, Sergeant Dampier testified that on September 10, 2013, at approximately 11:55 p.m., he began following a Ford sedan driven by Dibble that was traveling 10 to 15 miles per hour in a residential neighborhood where the speed limit was 25 miles per hour. Sergeant Dampier followed the car for about a half a block and was two to three car lengths behind it when the car suddenly turned right without signaling. Sergeant Dampier had to apply his brakes to prevent his vehicle from running into the Ford. Dampier continued to follow the Ford. While the Ford was four to five car lengths ahead of him, it made a second right turn without giving a turn signal, which again caused Sergeant Dampier to apply his brakes to prevent his car from hitting it. Sergeant Dampier then activated his emergency lights and conducted a traffic stop because the driver failed to signal and he believed the driver might be impaired.[1]

Sergeant Dampier testified that he stopped Dibble because Dibble was driving abnormally slow in an area where there were no impediments or conditions that would require him to drive that slow, on two separate occasions Dibble violated Vehicle Code

---

[1]    Since Sergeant Dampier was justified in stopping Dibble because he twice failed to signal before turning, we need not discuss whether Sergeant Dampier's other observations provided him with additional justification for the stop.

section 22107[2] by not signaling before turning right, and "he essentially made two right turns, doubling back towards an area he had already been." After hearing argument, the court denied the motion.

## DISCUSSION

Dibble acknowledges that Sergeant Dampier testified that he slowed his patrol car "to prevent the possibility" of running into Dibble's car. Nevertheless, he contends that Sergeant Dampier's reaction "does not automatically mean that his vehicle could have been affected by [Dibble's] decision to make a right-hand turn." With respect to his first right turn, Dibble further contends that he and Sergeant Dampier were traveling at the same speed, that Sergeant Dampier did not testify that Dibble slowed down,[3] and that no evidence was presented that Dibble's brake lights were activated when he turned. Based on these circumstances, Dibble appears to contend that Sergeant Dampier's testimony did not establish that he was "actually" affected by Dibble's failure to signal before he made his first right turn because they show only that he drove out of the officer's lane of travel. Thus, according to Dibble, Sergeant Dampier was not justified in stopping him for violating section 22107 based on his failure to signal when he first turned right. Dibble further contends that the court should have granted his suppression motion because his second right turn provided even less justification for Sergeant Dampier to stop him and the other aspects of his driving did not provide sufficient legal cause to stop his car. We disagree.

---

**2**     All further statutory references are to the Vehicle Code.

**3**     Dibble's assertion that Sergeant Dampier did not testify that Dibble slowed down when he made his first right turn is incorrect. During cross-examination, when asked if he had to "slam on" his brakes when Dibble made a right turn, Sergeant Dampier testified, in pertinent part, that Dibble slowed down before turning. Further, based on the context of Sergeant Dampier's answer, we interpret it to mean that Dibble slowed down each time he turned right.

4

"'In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review.' [Citation.]" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.)

"Under the cases, an officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.] The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case. [Citations.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1082-1083.)

Section 22107 provides: "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal …." Section 22108 provides: "Any signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning."

"[R]eading sections 22107 and 22108 together, a motorist must continuously signal during the last 100 feet traveled before turning, but only in the event other motorists may be affected." (*People v. Carmona* (2011) 195 Cal.App.4th 1385, 1394.) "[A] signal is primarily aimed at vehicles behind the car making the lane change. That even applies to a patrol car, irrespective of the lack of any other traffic. [Citation.]" (*People v. Logsdon* (2008) 164 Cal.App.4th 741, 744.)

"Moreover, the question is not whether [defendant] *actually* violated the statute. Rather, the issue was if some 'objective manifestation' that [he] *may* have committed such an error was present." (*People v. Logsdon*, *supra*, 164 Cal.App.4th at p. 746.)

Sergeant Dampier testified he was traveling two to three car lengths behind Dibble before Dibble suddenly made his first right turn without signaling causing Sergeant

5

Dampier to apply his brakes to avoid colliding with Dibble's car. A short time later, Sergeant Dampier was traveling four to five car lengths behind Dibble's car when Dibble again turned right without signaling, again causing Sergeant Dampier to apply his brakes in order to avoid a collision. Since each of Dibble's turns without signaling affected Sergeant Dampier's operation of his patrol car, Sergeant Dampier had an objective basis for concluding Dibble violated section 22107 each time he turned without signaling. Further, the above testimony by Sergeant Dampier refutes Dibble's contention that the circumstances he cites show that Sergeant Dampier was not "actually" affected by Dibble's failure to signal each time before he turned right. Thus, we conclude that the court did not abuse its discretion when it denied Dibble's motion to suppress.

## **DISPOSITION**

The judgment is affirmed.