Filed 3/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br><br>ANDREW HOLIMAN,<br><br>     Defendant and Appellant. | A160142<br><br>(Solano County<br>Super. Ct. No. FCR331055) |

Defendant Andrew Holiman was found in possession of illegal drugs and a handgun during a traffic stop initiated based on his failure properly to signal a right-hand turn he made after stopping at a stop sign, while the arresting officer's patrol car was stopped directly behind him. Holiman did signal the turn, but the basis for the traffic stop was that he did not turn on his signal blinker early enough: for the 100 feet he drove *before* coming to a stop. The arresting officer cited him for violation of Vehicle Code section 22108.

The trial court denied his motion to suppress the seized evidence, following which he pled guilty to two felony drug charges and was sentenced to a prison term. He now appeals, arguing (1) the warrantless seizure of the evidence violated the Fourth Amendment because the police lacked an objectively reasonable suspicion that the manner in which he signaled his right-hand turn violated Vehicle Code section 22108; and (2) even if he did violate the Vehicle Code, the police violated his rights to equal protection

1

under the federal and state constitutions because the traffic stop was the result of racial profiling.

We do not reach the equal protection issue because we agree the traffic stop was not supported by reasonable suspicion. Holiman's turn did not violate the Vehicle Code, and no reasonable police officer could think that it did. Therefore, we will reverse the judgment.

## BACKGROUND

On the afternoon of June 19, 2017, rookie police officer Laura Bellamy was driving in her patrol car in downtown Vallejo, California. She had been a member of the police force for only one month and was on patrol accompanied by a field training officer for mandatory on-the-job training. It would be another three months before she would complete her training and be ready to go on patrol unaccompanied. She had not yet completed the traffic phase of her training.

Officer Bellamy first saw Holiman's car when her patrol car came to a stop at another intersection, not at issue here. At that first intersection, she saw Holiman's car come to a stop at a stop sign on the cross-street to her right, and then make a left-hand turn in front of her patrol car and onto the street she was stopped on, in the opposite direction her patrol car was facing. Two years later at the suppression hearing, she testified that as Holiman made the left turn, she saw him "look[] at me and then quickly look[] away as if to want to hide his face" which she "found . . . curious," and "so I turned around and followed him," details not noted in her contemporaneous police report because she believed they had no "evidentiary value." After the "furtive glance," she did a U-turn and began following the car to "assess his driving behavior." She followed him for about two short city blocks until the two cars reached another intersection with a three-way stop sign. Holiman

2

came to a full stop, and then he proceeded ahead and made the right turn. There, she testified, he turned on his turn blinker "[j]ust prior" to making the right-hand turn.

Officer Bellamy did not immediately initiate a traffic stop. Rather, she continued following Holiman's car for about four more minutes, at a distance of nearly a mile, before activating her emergency lights and pulling the car over at a gas station. After stepping out of her patrol car, she approached the driver's side of his car with her hand on her gun, which was something she often did but did not always do during traffic stops. Her field training officer also got out of the patrol car, walked around to the other side of the car and leaned over, peering inside the front passenger side window.

Holiman disclosed he was on parole (for armed robbery) and, after Officer Bellamy confirmed he was subject to search terms, she searched his person and found a pill bottle and some cash, and then placed him in handcuffs in the backseat of her patrol car. In the ensuing search of his car she found a loaded semiautomatic handgun, a baggie containing methamphetamine and a jar containing marijuana. On his phone were texts indicating his involvement with possible drug sales. He was then arrested.

From the time Officer Bellamy began following Holiman until she stopped him, many other motorists in plain view committed traffic infractions, both before and after she observed Holiman make the right turn at issue here, and Bellamy did not stop any of them.

The People charged Holiman with five felony counts (four weapons offenses and one drug possession offense), together with allegations of a prior strike conviction. He moved to suppress the evidence seized from the car, arguing that the stop and search violated the Fourth Amendment of the United States Constitution. He also moved to dismiss the charges against

3

him, on the ground that the traffic stop violated the equal protection clause of the United States Constitution because Officer Bellamy had singled him out from dozens of other motorists she also saw violate the traffic laws that day, because he is Black.  After a hearing at which Officer Bellamy testified and video footage from the dashboard camera of her patrol car was admitted into evidence, the trial court received supplemental briefing and then denied both motions at a subsequent hearing.

The trial court ruled Officer Bellamy had a reasonable suspicion that Holiman had violated the Vehicle Code and thus the stop was lawful.  It explained the basis for its ruling as follows:

"I find, while whether or not there was a Vehicle Code violation, because the way the road bends, the short time span for this action, there could be an argument as to whether or not there was, in fact, a Vehicle Code violation under the reasonable doubt standard.[1]  There's little argument that there wasn't reasonable suspicion to believe that a Vehicle Code violation had occurred. [¶] All of the incidences in terms of the way the road bends or the entire block was at a certain speed, those go to whether the law was violated, not whether or not an officer had reasonable suspicion of there being a violation which was enough to begin the stop.

"Then the officer saw what, in my notes I indicated was a furtive glance or perhaps a suspicious look. · If the standard is objective, but we don't look beyond the objective standard, the fact that the officer saw the Vehicle Code violation, the officer can then use that Vehicle Code violation to follow the

---

[1]  The court's comments concerning a bend in the road appear to be a reference to an alternative argument pressed by the defense below, not reprised on appeal, that there was no Vehicle Code violation because, given the shape of the road, no actual turn was made but, rather, defendant had simply yielded.

4

vehicle to see if his subjective hunch turns out. [¶] It's also possible that a defendant on parole, with what turns out to be guns and drugs within his car when he made the stop—he made the furtive glance, under the current standard of looking at this objectively, the Court denies the motion, as the officer had reasonable suspicion to believe that a Vehicle Code violation had occurred, and when the officer pulls the defendant over, it turns out he's on . . . [¶] [p]arole. . . . and the officer could conduct the search."

The trial court also implicitly denied Holiman's nonstatutory motion to dismiss.[2]

Holiman then pleaded no contest to two drug-related charges and admitted the prior strike allegation, and the remaining charges were dismissed. The trial court subsequently imposed sentence (a prison term of seven years and four months). Holiman timely appealed, and the trial court granted his request for a certificate of probable cause to challenge the denial of his non-statutory motion to dismiss.

## DISCUSSION

The parties agree that if the traffic stop was invalid, the contraband found in Holiman's possession should have been suppressed. Holiman asserts two reasons the stop was unlawful but we reach only one, namely the Fourth Amendment violation.

As summarized by our Supreme Court: " 'A defendant may move to suppress evidence on the ground that "[t]he search or seizure without a

---

[2] Although the court did not make any express findings or rulings about the motion, it said it had considered the parties' arguments and then made oral comments from the bench rejecting some of the legal authorities Holiman had relied upon in support of his claim of selective enforcement, and the People do not make any claim that the trial court failed to rule on this issue.

warrant was unreasonable." ([Veh. Code,] § 1538.5, subd. (a)(1)(A).[3]) A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. [Citation.] "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." ' " (*People v. Suff* (2014) 58 Cal.4th 1013, 1053 (*Suff*).) "In cases where the facts are essentially undisputed, we independently determine the constitutionality of the challenged search or seizure." (*People v. Durant* (2012) 205 Cal.App.4th 57, 62 (*Durant*).) No party argues the relevant facts here were in conflict, and thus we deem the traffic stop's reasonableness to be essentially a question of law.

To satisfy the Fourth Amendment, "a detention must be supported by reasonable suspicion the person is involved in criminal activity." (*People v. Zaragoza* (2016) 1 Cal.5th 21, 56.) Reasonable suspicion means " ' "the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." ' " (*Suff, supra*, 58 Cal.4th at p. 1053; accord, *Heien v. North Carolina* (2014) 574 U.S. 54, 60 (*Heien*) [officer conducting traffic stop must have " 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law"].) " 'Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate

---

[3] All further statutory references are to the Vehicle Code unless otherwise indicated.

6

specific facts justifying the suspicion that a crime is being committed.' [Citation.] The motivations of the officer are irrelevant to the reasonableness of a traffic stop under the Fourth Amendment. [Citation.] 'All that is required is that, on an objective basis, the stop "not be unreasonable under the circumstances." ' " (*Suff*, at p. 1054.) If the detaining officer's justification for a traffic stop is based on a mistake—either factual *or* legal—then the resulting search or seizure is lawful under the Fourth Amendment as long as the officer's mistake is *objectively* reasonable. (*Heien*, at pp. 57, 60-61, 67.) "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' " (*Id*. at pp. 60-61.) At the same time, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." (*Id*. at p. 67.)

Holiman argues the traffic stop violated his Fourth Amendment rights because he did *not* violate the Vehicle Code, and thus Officer Bellamy lacked a reasonable suspicion to believe that he did and, thus, to stop him. He argues, citing *People v. Carmona* (2011) 195 Cal.App.4th 1385, 1391 (*Carmona*), which on this point has been implicitly abrogated by the United States Supreme Court (see *Heien, supra,* 574 U.S. at p. 60 [holding reasonable suspicion can be based on reasonable mistake of law]), that a police officer's mistaken belief that the law has been violated is irrelevant. The People respond there was no Fourth Amendment violation because Holiman *did* violate the law, and that even if he did not, Officer Bellamy had an objectively reasonable basis to *think* the law required Holiman to signal his right-hand turn sooner than he did and thus at worst made a reasonable mistake of law in interpreting the relevant statutes. In reply, Holiman concedes that a reasonable mistake of law can justify a warrantless search

7

but contends it was not objectively reasonable for Officer Bellamy to think his right-hand turn violated the law. We agree with Holiman.

Here, two sections of the Vehicle Code are relevant. Section 22107 provides: "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then *only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement*." (Italics added.) Section 22108 provides: "Any signal of intention to turn right or left shall be given continuously *during the last 100 feet traveled by the vehicle before turning*." (Italics added.)

These two statutes do not impose separate and independent obligations. It has been the law for more than a decade, since *People v. Carmona, supra*, 195 Cal.App.4th 1385, that the requirement of signaling continuously for 100 feet before a turn (§ 22108) is not a distinct traffic offense; that section applies *only* if another driver would be affected by the vehicle's movement within the meaning of section 22107. (*Carmona,* at p. 1394.) The People acknowledge this on appeal. Section 22108 "does not specifically command a person to do or refrain from doing anything. Rather it describes the required duration of a turn signal . . . ." (*Carmona*, at p. 1393.) "[S]ections 22107 and 22108 must be read together so that when a motorist is required by section 22107 to give a turn signal, that signal must be given continuously during the last 100 feet traveled by the vehicle before turning." (*Id*. at p. 1392.) That said, there is a legal question of first impression (which the parties have briefed on appeal) as to whether, when a signal *is* required by section 22107 for a turn *executed from a full stop at a stop sign,* the 100-foot signaling requirement under section 22108 applies; or whether it is sufficient, instead, to signal such a turn in the manner Holiman

8

did here (i.e., after stopping). But we need not decide that issue. Regardless of whether the 100-foot signaling requirement under section 22108 applies to such a turn, Holiman concedes that a reasonable officer could have *thought* that it does. Thus, the narrow question before us is whether Officer Bellamy had an objectively reasonable basis to believe a turn signal was required *at all* under section 22107—or, in other words, to believe another vehicle could be "affected by" the right-hand turn that Holiman made. (See *Durant, supra,* 205 Cal.App.4th at p. 63 ["When assessing the reasonableness of a traffic stop, the question is not whether appellant *actually* violated the Vehicle Code, but whether there was some ' "objective manifestation" that [he] *may* have' violated the Vehicle Code"].)

Holiman argues there is not. The People argue that Officer Bellamy reasonably could have believed that *her own patrol car*, which was stopped behind Holiman's car, could have been affected by the right-hand turn, thus supplying a reasonable suspicion to stop him when he failed to signal the turn in a manner she reasonably thought the law required (i.e., for the last 100 feet), even if ultimately she was mistaken about the law.

The first difficulty we have with the parties' arguments is that the People ask us to uphold the traffic stop based solely on theories they never asserted below. In the trial court, the People never sought to justify the traffic stop on the grounds that Officer Bellamy made a mistake of law or that Holiman's turn required a proper turn signal because it potentially affected *Officer Bellamy's car*. They argued only that Holiman actually violated the Vehicle Code because he insufficiently signaled a turn when there were other vehicles at the intersection, and presented no evidence that

9

the turn could affect any vehicle, including Officer Bellamy's.[4] Nor did the trial court address any of those questions. The People have changed their theory on appeal (and have abandoned any theory that Holiman's turn could have affected a car other than Officer Bellamy's), and in this situation we are hesitant to consider the issues they ask us to address because we cannot be certain the record is fully or adequately developed. (See *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1242-1243 [cautioning against considering new Fourth Amendment theories for first time on appeal when new theory is not supported by the record or when defendant had no notice nor opportunity to present evidence in opposition].) But Holiman does not ask us to deem the People's arguments forfeited. And so we will not.

Assuming the People's sole justification for the search is properly considered for the first time on appeal, we nevertheless reject it. No published authority cited by the parties addresses whether section 22107 applies in the circumstances here: namely, a turn made after coming to a

---

[4] Specifically, when Holiman moved to suppress the seized contraband, he argued it was the People's burden to justify the stop. In response, the People's only argument was that Holiman had *actually* violated the law because he "failed to activate his right turn signal" as he approached the intersection, "there were several other vehicles at the intersection," and Holiman then "proceeded to make a right turn without activating his signal." "Therefore," the People argued, "Officer Bellamy possessed specific articulable facts to stop defendant's vehicle." No specific citation to the Vehicle Code was given, and no argument was made that the turn potentially affected any car, much less Officer Bellamy's patrol car. The People reiterated the same legal theory again in supplemental briefing, even after Officer Bellamy testified at the suppression hearing and after Holiman specifically argued that the police report had alleged he violated Vehicle Code section 22108. And, at oral argument below, the People submitted on their briefing.

10

complete stop at a stop sign with another car behind.[5]  Nevertheless, the answer is not difficult.  The People have proffered neither evidence nor explanation of how Officer Bellamy's patrol car, which presumably also would be stopping at the stop sign, could have been affected by Holiman's turn and thus have shown no violation of the Vehicle Code.  More importantly, they have presented no objectively reasonable basis for an officer in Bellamy's position to *think* her car could have been affected, and thus have failed to show an objectively reasonable mistake, whether one of fact or of law.  As Holiman argues, the undisputed dash cam video footage shows that Officer Bellamy's patrol car came to a full stop behind Holiman's car and that, given the width of the road, there was no physical way for the patrol car to have proceeded around Holiman on the right to attempt to make a right-hand turn and potentially collide with Holiman's car while he was making the turn.

We acknowledge the absence of published authority addressing this specific factual scenario, that other cases have concluded that motorists to a driver's rear could, in circumstances not present here, potentially be affected

---

[5]  Compare *Carmona, supra,* 195 Cal.App.4th at pp. 1390-1391, 1394 (no signal required for right-hand turn, because only motorist nearby was patrol car approaching from opposite direction) with *Suff, supra,* 58 Cal.4th at pp. 1051, 1055-1056 (signal required for right-hand turn made suddenly by van after stopping at red light and without moving over toward the curb, because motorcycle stopped behind the van "was clearly in a position to be affected by defendant's turn; had [motorcyclist] decided to proceed to the right of defendant's van to make a right turn, he would have done so without knowing that defendant was planning to turn right into the same path"); *People v. Logsdon* (2008) 164 Cal.App.4th 741, 743-746 (*Logsdon*) (signal required for lane change made while traveling in front of another car in same lane, because other car could not know if lane change was unintentional and thus could not predict if driver would make a "very sudden over-correction"); see also *Durant, supra,* 205 Cal.App.5th at pp. 61, 63, 64 (declining to decide whether turn signal was required for left turn made on green arrow light from dedicated left turn lane, with oncoming motorists stopped at red light).

11

by the driver's unsignaled turn or lane change (see *Suff, supra*, 58 Cal.4th at pp. 1051, 1055-1056; *Logsdon, supra*, 164 Cal.App.4th at pp. 743-746), and indeed that "the primary benefit of the signal requirement is for the vehicles to the rear of the signalling vehicle." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 930.) But "the actual language in Vehicle Code section 22107 is clear and unambiguous." (*Logsdon*, at p. 746.) It is unclear to us how any reasonable person reading its plain text could think there was even a potential hazard to a car in Officer Bellamy's position. That is, that there could be a potential hazard posed to a full-size car approaching a stop sign on a narrow one-lane street behind another full-size car, where it is physically impossible to pass to the right of the car ahead of it, if the car ahead, after stopping, were to make a right-hand turn rather than proceed in another direction. (Compare *People v. Gerberding* (2020) 50 Cal.App.5th Supp. 1, 10 [officer's mistaken interpretation of municipal code held unreasonable despite the absence of any prior published authority because "its language is straightforward"; " ' "*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an unambiguous statute" ' "]; with *Heien, supra*, 574 U.S. at pp. 67-68 [traffic stop based on mistake of law held valid, because statute had never previously been construed by state appellate court, and officer's construction of it was consistent with how "everyday reader of English" would understand the statute's plain text]; *id.* at p. 70 ["[i]f the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not"] [conc. opn. of Kagan, J.]; *People v. Campuzano* (2015) 237 Cal.App.4th Supp. 14, 20-21 and fn. 8 [defendant held lawfully stopped based on officer's mistaken interpretation of city ordinance because ordinance was ambiguous, had never

previously been construed, and presented an issue that "highlights the sometimes difficult task for lawyers and judges of determining the meaning of statutes by way of statutory construction"].)

Also true, as the People assert, the Supreme Court has held that a *motorcycle* could potentially be affected by a right-hand turn made by a car stopped ahead of it (thereby necessitating a turn signal), because motorcycles are small and can move in and around and past the cars in front of them. (See *Suff*, *supra*, 58 Cal.4th at pp. 1055-1056.) But that situation is fundamentally different. When evaluating a potential traffic hazard, no reasonable person could equate the maneuverability of, and risks posed to, a motorcycle behind a car making a turn from a one-lane road with those of full-size car.

Citing *Suff*, *Logsdon* and *Carmona*, the People argue that "the language in those cases reasonably furnished Officer Bellamy a basis for *believing* that appellant had violated the Vehicle Code, and no caselaw would have led a reasonable officer to predict a contrary outcome in this case." (Italics added.) But the People do not explain why those cases furnished a reasonable basis to think that Officer Bellamy's patrol car could have been affected by Holiman's right-hand turn. The statute at issue here is not ambiguous, the only question is whether the facts justified its application. Fundamentally, the People presented no evidence on the issue and have not even attempted to explain why it was objectively reasonable for an officer in Officer Bellamy's situation to think there was a potential danger posed to her patrol car in this circumstance. (See *Heien*, *supra*, 574 U.S. at p. 70 ["the test is satisfied when the law at issue is so 'doubtful in construction' that a reasonable judge could agree with the officer's view"] [conc. opn. of Kagan,

13

J.].)  Holiman did not violate section 22107, and Officer Bellamy did not have a reasonable basis to think that he did.

No matter how well-intentioned Officer Bellamy's efforts to enforce the traffic law in this instance might have been, the traffic stop was not supported by reasonable suspicion that Holiman's right-hand turn violated the law.  The trial court therefore erred in denying Holiman's motion to suppress the evidence seized in violation of his Fourth Amendment rights.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to set aside its order denying the motion to suppress, enter a different order granting the motion, and allow appellant to move to withdraw his no contest plea.

_____
STEWART, J.

We concur.

_____
RICHMAN, Acting P. J.

_____
MAYFIELD, J. *

*People v. Holiman* (A160142)

* Judge of the Mendocino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15

Trial Court:  Solano County Superior Court

Trial Judge:  Hon. William J. Pendergast III; Hon. Jeffrey Kauffman

Counsel:

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano, Amit Kurlekar, Deputy Attorneys General, for Plaintiff and Respondent.