Filed 12/13/13  P. v. Trice CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056369 |
| v. | (Super.Ct.No. RIF1100762) |
| DARREN LEE TRICE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed as modified.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie  L. Garland, Assistant Attorney General, and Melissa Mandel, Charles C. Ragland and Marissa A. Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

On November 10, 2011, a jury convicted defendant Darren Lee Trice of transporting a controlled substance, namely cocaine base (Health & Saf. Code, § 11352, subd. (a); count 1), possessing a controlled substance, namely cocaine base (Health & Saf. Code, § 11350, subd. (a); count 2), being under the influence of a controlled substance (Health & Saf. Code § 11550, subd. (a); count 4), and possessing drug paraphernalia (Health & Saf. Code § 11364; count 5). In a bifurcated trial, the court found true the special allegations that defendant suffered six prison priors and five prior strike convictions. (Pen. Code, §§ 667, subds. (c) & (e)(2)(a), 667.5, subd. (b), and 1170.12, subd. (c)(2)(A).) On May 25, 2012, the court sentenced defendant to six years plus 25 years to life as follows: 25 years to life for counts 1 and 2, one year for count 4, and six months for count 5. Counts 2, 4 and 5 were ordered to run concurrent with count one. With respect to the Penal Code section 667.5, subdivision (b) prior conviction allegations, the trial court imposed a consecutive sentence of six years. Defendant appeals, contending the trial court erred in denying both his motion to suppress evidence and his request to strike prior convictions. He further raises challenges to his sentence. As discussed below, we affirm the conviction but modify the sentence to conform with Penal Code section 654.

## I. FACTS

On November 9, 2010, at approximately 4:00 a.m., Detective Chad Chinchilla of the Riverside Police Department and his partner, Officer Silvio Macias, stopped defendant for a traffic violation. After speaking to defendant for about one minute, Detective Chinchilla, who was trained to recognize the symptoms of drug and alcohol

2

use, formed the opinion that defendant's speech pattern, facial expressions, and eye movement indicated he was under the influence of a controlled substance. The officers placed defendant under arrest.

Following the arrest, Officer Macias performed a search of defendant's automobile and discovered a "crack" pipe by the emergency brake. Detective Chinchilla noticed a white substance inside the pipe and extracted it for testing. The extracted substances weighed about 0.2 grams and were established to be a "usable quantity" of cocaine base. Defendant's blood was also taken for testing. The blood test established the presence of cocaine in defendant's body. A toxicologist who performed the blood test also stated that the symptoms Detective Chinchilla testified about were consistent with someone who was under the influence of cocaine.

## II.  MOTION TO SUPPRESS

Defendant challenges the denial of his motion to suppress, arguing that the officers did not have reasonable suspicion to stop his car.

### A.  Further Background Information

On November 9, 2010, defendant was traveling in his car northbound on Olivewood, approaching Fourteenth Street to turn right. A patrol car that had been traveling southbound on Olivewood made a U-turn to follow defendant because it was approximately 4:00 a.m. Detective Chinchilla and his partner were inside the patrol car driving a few car lengths behind defendant, traveling "from 20 to about 25 or 30 miles an hour." Defendant was traveling in the far right lane, approaching Mulberry. Detective Chinchilla noticed that defendant's center brake light inside the rear window of

3

defendant's car did not illuminate. Further, defendant turned on his signal as he was turning onto Mulberry. As a result of these two violations, the detective decided to stop defendant. Detective Chinchilla conceded that his partner did not need to "slam" on the brakes, nor did he (Detective Chinchilla) feel himself propelled forward in reaction to a sudden braking upon defendant's turn. Nonetheless, the officers cited defendant for failing to properly signal before turning. (Veh. Code, § 22107.)

Nellie Trice, defendant's mother and the registered owner of the car, testified that she went down to the tow yard and tested the brake lights. She observed that all brake lights were working. Mrs. Trice also had the woman working at the tow yard come and witness that the center brake light was operative.

The trial court conceded there might be "some question" as to whether the inoperative brake light justified the traffic stop. However, the court found that the turn signal violation was sufficient to support the detention and, on that ground, denied the motion to suppress.

**B. Standard of Review**

"'In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review.' [Citation.] On appeal we consider the correctness of the trial court's ruling

4

itself, not the correctness of the trial court's reasons for reaching its decision. [Citations.]" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145, italics omitted.)

A traffic stop may be "supported by reasonable suspicion of one or more Vehicle Code violations . . . ." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1137.)

**C. Analysis**

Here, the police believed they had witnessed two separate violations; however, the trial court found the turn signal violation was sufficient to support the detention, and on that ground, denied the motion to suppress. Thus, we focus on the turn signal violation.

Vehicle Code section 22107 prohibits "mov[ing a vehicle] right or left upon a roadway until . . . after the giving of an appropriate signal . . . *in the event any other vehicle may be affected by the movement*." (Italics added.) Vehicle Code section 22108 provides, "Any signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning." "[R]eading [Vehicle Code] sections 22107 and 22108 together, a motorist must continuously signal during the last 100 feet traveled before turning, but only in the event other motorists may be affected." (*People v. Carmona* (2011) 195 Cal.App.4th 1385, 1394 (*Carmona*).) Defendant therefore argues there was insufficient evidence that his right turn affected any other vehicle. He points out that he "traveled at a speed of no greater than 30 miles per hour, and in the far right lane, the entire time the police were behind him. That lane was a protected right turn lane. [He] slowed at the intersection, then signaled as he made the right turn. This action did not cause the patrol car to slam on the brakes or make any sudden movement. [¶] In fact, there was no testimony that [his] right turn came as a

5

surprise or that his failure to signal sooner caused the officers to alter their rate of travel in any way. All of this evidence shows that the turn was made safely and not in a manner that might have affected a reasonable driver in the car behind—as indeed it did not."

"Actual impact upon another motorist is not required; a potential effect is sufficient to trigger the signal requirement. [Citation.]" (*People v. Durant* (2012) 205 Cal.App.4th 57, 63.) The vehicle affected may be "a patrol car, irrespective of the lack of any other traffic. [Citation.]" (*People v. Logsdon* (2008) 164 Cal.App.4th 741, 744, fn. omitted (*Logsdon*); accord, *People v. Miranda* (1993) 17 Cal.App.4th 917, 930 (*Miranda*).)

Relying on *Carmona* and *Logsdon*, defendant contends that his turn could not have affected anyone on the road and thus did not violate the Vehicle Code in question. He argues that the "gravamen of the holding in *Carmona* was that a violation of Vehicle Code section 22108 cannot occur in a void." In *Carmona*, the defendant made a right hand turn without signaling. At the time the officers observed the violation, they were traveling in the opposite direction, across the street, and no other car was following the defendant's car. (*Carmona*, *supra*, 195 Cal.App.4th at p. 1388.) The appellate court ultimately agreed that defendant's turn was not one requiring a signal because there was no other vehicle following which might have been affected by the turn. (*Id*. at p. 1389.) In *Logsdon*, the defendant pulled out of a gas station and crossed all but one lane in a seven lane road. A police officer observed defendant's movement and entered the lane behind him, following within 100 feet. While following defendant, the officer watched him change lanes without signaling. The officer stopped the defendant for making an

6

unsignaled lane change. (*Logsdon*, *supra*, 164 Cal.App.4th at p. 743.) The appellate court concluded that because the officer was behind defendant, the unsignaled lane change could have affected the officer, even though the officer stated that he was not actually affected by the lane change. (*Id*. at pp. 744-746.) The *Logsdon* court reasoned that a signal is primarily aimed at vehicles behind the car making the lane change or turn. (*Id*. at pp. 744.) A failure to signal before a turn while a car is behind the turning car is "prima facie unsafe. . . ." (*Miranda*, *supra*, 17 Cal.App.4th at p. 930.)

The facts in *Carmona* differ from the facts before this court, because in *Carmona* the officers were traveling in the opposite direction, across the street, and there were no cars following the defendant's car. Rather, the facts are more like those in *Logsdon*. Here, Detective Chinchilla's patrol car was well within 100 feet of defendant's car and thus could have been affected by defendant's improper turn. In sum, the officers had probable cause to believe that defendant was required to signal but failed to do so in violation of Vehicle Code section 22107.

Because we have found the traffic stop based upon a violation of Vehicle Code section 22107 to have been proper, the trial court did not err in denying defendant's motion to suppress.

### III. MOTION TO STRIKE PRIORS

Defendant faults the trial court for denying his motion to strike prior strike convictions. (*People v.* (*Superior Court*) *Romero* (1996) 13 Cal.4th 497 (*Romero*).) He contends the court "gave undue emphasis to his criminal history and insufficient weight

7

to the de minim[i]s nature of the current offenses and therefore abused its discretion in denying the motion."

## A. Standard of Review

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)  Defendant has the burden of demonstrating an abuse of discretion and, in the absence of such a showing, we presume the trial court acted correctly.  (*Id.* at pp. 376-377.)  Even if we might have ruled differently in the first instance, we will affirm the trial court's ruling as long as the record shows the trial court "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law. . . . .'" (*Id.* at p. 378.)  An exercise of discretion to strike a prior conviction pursuant to Penal Code section 1385 requires the trial court to balance the legitimate societal interest in imposing longer sentences for repeat offenders and the defendant's constitutional right against disproportionate punishment.  (*Romero*, *supra*, 13 Cal.4th at pp. 530-531.)  Trial courts "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  There is a "'strong presumption' [citation] that the trial judge properly exercised his discretion in refusing to strike a prior conviction allegation." (*In re Large* (2007) 41 Cal.4th 538, 551.)  The circumstances must be "extraordinary" for

8

a career criminal to be deemed to fall outside the scheme of the Three Strikes law. (*People v. Carmony*, *supra*, at p. 378.)

### B. Further Background Facts

Defendant (born in April 1963) began a life of crime as a juvenile. On May 12, 1980, he was convicted of robbery. (Pen. Code, § 211.) While on parole, and when he was an adult, in 1982 defendant was convicted of four felonies: two counts of robbery (Pen. Code, § 211), one count of attempted robbery (Pen. Code, §§ 664, 221), and one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). These convictions are considered four strikes pursuant to Penal Code sections 667, subdivisions (c) and (e)(2)(A), and 1170.12, subdivision (c)(2)(A). He was sentenced to seven years in prison and was paroled in April 1987. Two months later, he was convicted of misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). Two years later, in June 1989, he was convicted of two counts of misdemeanor trespass in a motor vehicle (Pen. Code, § 602, subd. (n)).

On December 30, 1989, in Riverside County; May 23, 1990, in Los Angeles County; and then again on June 16, 1992, in Los Angeles County, defendant was convicted of felony possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)). On August 30, 1996, defendant was convicted of making criminal threats, a felony (Pen. Code, § 422). This conviction is considered a strike pursuant to Penal Code sections 667, subdivisions (c) and (e)(2)(A), and 1170.12, subdivision (c)(2)(A). Two years later, in July 1998, he was yet again convicted of felony possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)). In November 2000 he received a

felony conviction for possession of a firearm by a felon (Pen. Code, § 12012, subd. (a)(1)) for which he was sentenced to six years in prison.  He violated his parole five times.

As the People note, defendant has been arrested at least 29 times, has 12 criminal convictions, of which nine are felonies and five are strike offenses, and he has spent more than 22 years in state prison, not counting local custody.

**C.  Analysis**

Defendant summarizes his criminal history as consisting of four strikes in 1982 and one strike in 1996.  He notes the worst of his past crimes are the most remote, nearly 30 years old, while the most recent occurred 15 years ago, consisting of making threatening statements to security officers.  Thus, he challenges the denial of his *Romero* motion, arguing his "history reveals that his crimes are of decreasing severity—the most serious being the most remote."

When a prior conviction is remote, and the defendant has led a crime-free life between that prior conviction and the present offense, the trial court may consider remoteness as a factor favoring dismissal of a strike.  (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)  However, the remoteness of a prior conviction does not alone require dismissal:  "Where, as here, the defendant has led a continuous life of crime after the prior, there has been no 'washing out' and there is simply nothing mitigating about a 20-year-old prior.  [Citations.]"  (*Ibid.*; see also *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [Appellate court reversed the trial court's dismissal of a strike that was 17 years old but was followed by recidivism].)  As the People point out, while defendant's last

10

strike conviction was in 1996, he was convicted of two more felonies afterwards, not including his current convictions. Specifically, in 1998 he was convicted of possessing a controlled substance, and then in 2000 he was convicted of being a felon in possession of a firearm. Since his last prior, he has violated parole six times. While his crimes may be decreasing in severity, he has by no means experienced a washing out period.

The trial court's remarks at sentencing make clear that it gave due consideration to defendant's criminal history.[1] The court observed the lack of evidence that defendant would live a lawful life "because his history from the age of 17 years old up to the present time reflects that incarceration doesn't change the behavior, being given breaks don't change the behavior. If he did, as his mother stated, complete programs while in state prison on—with respect to drugs, that doesn't work. It was futile. [¶] And so while at home he may be a wonderful human being . . . [but] when he's out in society . . . he presents himself as a danger to society, a career criminal, who is absolutely within the spirit of the three strikes law." Recognizing that defendant needed rehabilitation, the court observed that to use his need for rehabilitation at this late stage in his life as the reason for not imposing the Three Strikes law is "something that is just not compelling." According to the trial court, defendant has never been free from a life of crime "since he was 17 years old. And even when given chances, repeated chances, year after year after year, he violates, breaks his promise, and goes out and commits another crime. And there is no change in terms of the public perception of his criminal activity and his history. It's

---

[1] "I have listened to everything that was said . . . [¶] . . . I can understand where he's a good man. . . . But there is another side which I took great pains to go through so that [everyone] could hear what the other side of [defendant] is."

11

in black and white. That's what he's been convicted of. It's nothing that's made up. [¶] And so I'm going to stick with my tentative ruling . . . and deny the *Romero* motion. I think that this defendant falls exactly within the scheme of the three strikes law."

Considering defendant's criminal record, we agree with the trial court's comments and conclude that it did not abuse its discretion in denying his *Romero* motion.

## IV. PENAL CODE SECTION 654

Defendant was convicted of transporting a controlled substance (count 1), possessing a controlled substance (count 2), and possessing paraphernalia (count 5) based on the cocaine in a glass pipe found in his vehicle. The trial court imposed a sentence of 25 years to life as to count 1, and concurrent sentences for counts 2 and 5. Defendant contends, and the People concede, that defendant's sentence on counts 2 and 5 should have been stayed pursuant to Penal Code section 654.

Penal Code section 654, subdivision (a) provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 precludes multiple punishments not only for a single act, but for an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294; see also *People v. Centers* (1999) 73 Cal.App.4th 84, 98 [Fourth Dist., Div. Two].) "The purpose of this statute is to prevent multiple punishments for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)

12

In this case, we agree with the parties that under Penal Code section 654, the trial court erred in imposing concurrent sentences for counts 2 and 5. The offenses of transporting a controlled substance, possessing a controlled substance and possessing paraphernalia were all based on defendant's possession and transportation of cocaine base and a pipe, which were not found in his possession, but rather hidden in his car. However, the controlled substance in question was 0.2 grams of cocaine base that was packed in a pipe used to smoke the cocaine base. In committing these three offenses, defendant had one objective, to move the substance and paraphernalia from one place to another for personal use. While under certain circumstances a person may have different intents and objectives for possessing drugs and paraphernalia, here the drugs were found inside the pipe and both were possessed for personal use. Thus, his conduct arose from an individual course of conduct, as he had one criminal objective.

Under Penal Code section 654, defendant could be punished for one conviction, but not all three. (See *In re Adams* (1975) 14 Cal.3d 629, 633 [applying Penal Code section 654 to Health and Safety Code offenses].) Therefore, the concurrent terms on counts 2 and 5 should be stayed under Penal Code section 654.

## V. THREE STRIKES REFORM ACT OF 2012

In supplemental briefing, defendant requests that this court remand his case to the trial court for mandatory resentencing under the recently enacted Proposition 36, the Three Strikes Reform Act of 2012, Section 10 (Prop. 36, as approved by voter Ballot Pamp., Gen. Elec. (Nov. 6, 2012)) (hereafter the Reform Act or the act). The Reform Act became effective on November 7, 2012, two years after defendant's arrest, one year after

13

his conviction and five and one-half months after sentencing.  (Pen. Code, §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), 1170.126.)[2]  Relying on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), defendant contends he is entitled to mandatory resentencing because his convictions are not yet final and the act provides for reduced punishment. The People oppose the request, arguing that the act allows persons like defendant, who are presently serving an indeterminate sentence but whose sentence under the act would not have been an indeterminate sentence, to file a petition for recall in the trial court for discretionary resentencing.  We conclude that defendant is not entitled to mandatory resentencing under the act, but agree with the People that defendant is free to file a petition for recall in the trial court to request discretionary resentencing

## A.  Proposition 36

Under the Three Strikes law as it existed before the passage of the Reform Act, a defendant with two or more strike priors who is convicted of any new felony would receive a sentence of 25 years to life.  (Former § 667, subd. (e)(2)(A).)  As amended, section 667 provides that a defendant who has two or more strike priors is to be sentenced pursuant to paragraph 1 of section 667, subdivision (e)—i.e., as though the defendant had only one strike prior—if the current offense is not a serious or violent felony as defined in

---

[2]  All further statutory references are to the Penal Code unless otherwise indicated. For convenience, we will refer solely to section 667, subdivision (e) in discussing the Reform Act, omitting reference to the substantially identical section 1170.12, subdivision (c).  However, the analysis applies to both sections 667 and 1170.12.

section 667.5, subdivision (c) or section 1192.7, subdivision (c), unless certain disqualifying factors are pleaded and proven.[3] (§§ 667, subds. (d)(1), (e)(2)(C).)

The Reform Act also provides a procedure that allows a person who is "presently serving" an indeterminate life sentence imposed pursuant to the Three Strikes law to petition to have his or her sentence recalled and to be sentenced as a second strike

_____

[3] Section 667, subd. (e)(2)(C) provides that second strike sentencing does not apply if the prosecution pleads and proves any of the following:

"(i) The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.

"(ii) The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and 285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 311.11, and Section 314.

"(iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

"(iv) The defendant suffered a prior serious and/or violent felony conviction, as defined in subdivision (d) of this section, for any of the following felonies:

"(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

15

offender, if the current offense is not a serious or violent felony and the person is not otherwise disqualified.  The trial court may deny the petition even if those criteria are met, if the court determines that resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126, subds. (a)-(g).)  Accordingly, under section 1170.126, resentencing is discretionary even if the defendant meets the objective criteria (§ 1170.126, subds. (f), (g)), while sentencing under section 667, subdivision (e)(2)(C) is mandatory, if the defendant meets the objective criteria.

## B.  Defendant Is Not Entitled to Mandatory Resentencing

As stated above, defendant was five and one-half months into serving his prison sentence when the Reform Act went into effect.  Thus, at that time he was "presently serving" his life sentence.  In *People v. Lester* (2013) 220 Cal.App.4th 291 (*Lester*) [Fourth Dist., Div. Two], this court held that, under the rule set forth in *Estrada*, the intent of the voters in passing Proposition 36 was to reserve the mandatory reduction in sentence to *future* felony offenders, but to allow *existing* inmates whose most recent offense was not a serious or violent felony to apply for discretionary resentencing.  This is because the voter information guide for the initiative "could not have been more clear in its distinction between the two and nowhere is there a reference to the possibility that some existing inmates would automatically receive a twice-the-base-term sentence merely because their judgments are not yet final."  (*Lester* at p. 302)  Further, we concluded: "Given the information supplied to the voters, we view Penal Code section 1170.126 *as the functional equivalent of a saving clause*.  'The rule in *Estrada* [that a statute amended to lessen the punishment for an offense is presumed intended by the

16

Legislature to apply to all judgments not yet final as of the statute's effective date, unless the Legislature clearly indicates the intent that the amendment apply prospectively only] . . . is not implicated where the Legislature clearly signals its intent to make an amendment prospective, by the inclusion of either an express saving clause or its equivalent . . . .' [Citation.]" (*Lester* at p. 303, italics added and omitted.)

We also note that in *People v. Yearwood* (2013) 213 Cal.App.4th 161, 172, 175-176, the first published opinion to consider this question, the Fifth District reached the same conclusion. Defendant does not benefit from the mandatory provisions of the act.

## C. Conclusion

We conclude that in passing the Three Strikes Reform Act of 2012, the electorate intended the mandatory sentencing provision of sections 667, subdivision (e)(2)(C) to apply prospectively only, rather than to convicted felons who were already serving their not-yet-final-on-appeal life sentences at the time the Reform Act went into effect.

## VI. NO CRUEL AND UNUSUAL PUNISHMENT

Finally, defendant argues the 25-years-to-life portion of his sentence for transporting a trace amount of cocaine base is cruel and unusual punishment under the Eighth Amendment to the United States Constitution because it is grossly disproportionate to the crime committed.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citations.]" (*Ewing v. California* (2003) 538 U.S. 11, 20 (*Ewing*).) However, successful challenges to the proportionality of particular sentences "'outside the context of capital

17

punishment' " are " 'exceedingly rare.'" [Citation.]" (*Id*. at p. 21.)  When a recidivism statute comes into play, the test for determining whether a sentence violates the Eighth Amendment is not simply the gravity of the current or "triggering" offense.  Rather, a proportionality review under the Eighth Amendment must "give full effect to the State's choice" of furthering a legitimate "public-safety interest in incapacitating and deterring recidivist felons." (*Ewing*, at p. 29.)  As a result, a proportionality review must take into consideration not only the gravity of the current or "triggering" offense but also the length and seriousness of the defendant's criminal history.  (*Id*. at pp. 28-30.)

In *Ewing*, the Supreme Court concluded the defendant's sentence of 25 years to life under California's Three Strikes law was not "grossly disproportionate" for a defendant who shoplifted golf clubs worth about $1,200 because he had a lengthy criminal history, including three burglaries and a robbery.  (*Ewing, supra,* 538 U.S. at pp. 28-30.)  On the record before us, we can discern no legitimate or meaningful basis for distinguishing the sentence found constitutional in *Ewing* with the one imposed against defendant in this case.  Defendant's cocaine base transportation offense and criminal history of robbery, assault, firearm possession and multiple drug offenses described above are at least as serious as the theft offense and criminal history at issue in *Ewing*.  We therefore conclude defendant's 25-years-to-life sentence is not "grossly disproportionate" under the Eighth Amendment.

"The basic test of a cruel or unusual punishment under the California Constitution is whether it is so disproportionate to the crime as to shock the conscience and offend fundamental notions of human dignity.  [Citations.]  The main technique of analysis is to

18

examine the nature of the offense and of the offender. [Citation.] The court must consider both the nature of the offense in the abstract, and the facts of the crime in the particular case, including factors such as motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences. [Citation.] As to the offender's nature, the question is whether the punishment is 'grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.' [Citation.]" (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 845, citing *People v. Dillon* (1983) 34 Cal.3d 441, 478 & *In re Lynch* (1972) 8 Cal.3d 410, 424.) "A defendant has a considerable burden to overcome when he challenges a penalty as cruel or unusual." (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 529.)

For the same reasons discussed *ante* in connection with defendant's Eighth Amendment claim, we cannot conclude defendant's 25-years-to-life sentence is cruel or unusual under the California Constitution.

## VII. DISPOSITION

The judgment is modified to stay the imposition of sentence on counts 2 and 5 pursuant to Penal Code section 654. The superior court clerk is directed to prepare a new sentencing minute order to reflect the sentence modification. The superior court clerk is further directed to amend the abstract of judgment to reflect that counts 2 and 5 are stayed pursuant to Penal Code section 654. The superior court clerk is further directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

19

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


I concur:

MILLER
J.

**HOLLENHORST, J**., Dissenting and Concurring Opinion.

I respectfully concur in everything but the discussion of the Three Strikes Reform Act of 2012, Section 10 (Prop. 36, as approved by voter Ballot Pamp., Gen. Elec. (Nov. 6, 2012)) (hereafter the Reform Act), which became effective on November 7, 2012. (Pen. Code,[1] §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), 1170.126.) This issue of whether the electorate intended the act solely to operate prospectively is currently under consideration by the California Supreme Court. (*People v. Lewis* (2013) 216 Cal.App.4th 468, review granted Aug. 14, 2013, S211494 [holding the Reform Act applies retroactively]; *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted Aug. 14, 2013, S211275 [holding the Reform Act is not retroactive]; *People v. Yearwood* (2013) 213 Cal.App.4th 161, 167 [not retroactive]; *People v. Lester* (2013) 220 Cal.App.4th 291, 304 (conc. & dis. opn. of Hollenhorst, J.) [not retroactive but with dissent]; *People v. Contreras* (Nov. 18, 2013, G047603) __ Cal.App.4th __ [2013 Cal.App. Lexis 926] [retroactive]). I affirm my dissent in *Lester*, agree with the analysis in *Contreras*, incorporate both by reference, and for those reasons conclude that in passing the Reform Act, the electorate intended the mandatory sentencing provisions of sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) to apply to qualifying defendants whose judgments were not yet final on

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

the effective date of the act.  Hence, I would vacate defendant's sentence and remand the matter to the trial court for resentencing.  As such, the discussion of whether defendant's punishment is cruel and unusual would be deemed moot.


        <u>HOLLENHORST</u>

                J.