Filed 9/29/15  P. v. Rankin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C076390 |
| Plaintiff and Respondent, | (Super. Ct. No. CM035798, CM038888) |
| v. | |
| GEORGE DAVID RANKIN, | |
| Defendant and Appellant. | |

Defendant George David Rankin appeals from the judgment entered following a jury trial which resulted in his conviction for possession of methamphetamine for sale. On appeal, defendant contends the trial court erroneously denied his motion to suppress illegally seized evidence.  (Pen. Code, § 1538.5.)[1]  We disagree.  Although police officers lacked a reasonable basis to detain defendant, the taint of the detention was attenuated by

---

[1] Undesignated statutory references are to the Penal Code.

1

defendant's probation status.  As a result, the evidence obtained in the search was not inadmissible as "fruit of the poisonous tree."  Accordingly, we find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by complaint with possession of a controlled substance for sale (Health & Saf. Code, § 11378) and receiving stolen property (§ 496, subd. (a)).[2]  The complaint further alleged that defendant had a prior strike conviction (§ 1170.12, subds. (a)-(d)), and three prior prison terms (§ 667.5, subd. (b)).

Defendant moved to suppress the evidence against him pursuant to section 1538.5. The motion to suppress was heard at the same time as the preliminary hearing.  At the hearing, Officer Tiffany Larson of the Paradise Police Department testified that she and her partner, Sergeant Reinbold, responded to a disturbance call at an apartment complex in Paradise on the afternoon of July 8, 2013.  According to Larson, dispatch reported a "verbal altercation" between the complex manager, Jennifer Rager, and a tenant, Jessica Castro, regarding "unwelcome guests" in Castro's apartment.[3]  Larson was familiar with Castro from prior contacts.

Officer Larson and Sergeant Reinbold arrived at the apartment complex and were met by Rager in the parking lot.  Following a brief conversation with Rager (the substance of which is not reflected in the record, Larson and Reinbold made their way to Castro's apartment.  By this time, Larson and Reinbold understood that the verbal altercation between Rager and Castro was over.

---

[2]  The receiving stolen property count (§ 496, subd. (a)) was later dismissed on the People's own motion.

[3]  The record does not specify who called 911; however, Officer Larson referred to Rager as the "reporting party" during her testimony, raising a reasonable inference that Rager placed the call.

2

As they approached Castro's front door, Officer Larson and Sergeant Reinbold could hear several adult voices coming from inside the apartment. As they prepared to knock, the door opened, and a man and woman, later identified as defendant and Traci Gaccol, emerged. Defendant was carrying "a large, black duffle bag and a computer bag."

Officer Larson and Sergeant Reinbold contacted defendant and Gaccol. Defendant and Gaccol indicated that they were preparing to leave in a taxi cab. According to Larson: "Based on the circumstances and the ongoing issue with unwanted guests, and the verbal dispute, [I] verbally detained both [defendant] and the female. [¶] . . . [¶] When they asked to leave via a cab, I told them that they needed to stay." Defendant and Gaccol set down their belongings and complied.

On cross-examination, Officer Larson acknowledged that she had no information suggesting that defendant was involved in the verbal altercation that precipitated the 911 call. According to Larson, "I did not know if [defendant or Gaccol] were involved; that's why I asked them to stay."

Sergeant Reinbold interviewed the occupants of Castro's apartment. In the meantime, Officer Larson observed defendant and noticed that "he kept fidgeting, looking at his cell phone, kept manipulating his front pocket. He had, you know, involuntary muscle movements in his hands, sweating." Defendant's behavior led Larson to believe he might be under the influence of a controlled substance.

Officer Larson and Sergeant Reinbold checked defendant's identification with dispatch and learned that he was on felony probation with standard search terms.

Officer Larson decided to search defendant "[b]ased on his demeanor and his search terms." In defendant's pants pocket, she found several empty baggies and a baggie containing a white crystalline substance. Larson also searched the duffle bag and found approximately one-half pound of a white crystalline substance, packaged in large and small baggies, along with scales, packaging materials, glass smoking pipes, a lockbox, and a stun gun. The duffle bag also contained mail and prescription bottles

3

bearing defendant's name.  The white crystalline substance in defendant's pants pocket and duffle bag was subsequently determined to be methamphetamine.

After hearing argument, the trial court (Lucena, J.) denied the motion to suppress, stating:  "With regards to the detention, the Court does find that there was reasonable suspicion to detain.  Defendant was observed exiting the apartment in question after being directed to that specific apartment.  There was a report of a disturbance, and the officer testified that they were sorting out who was involved.  Whether or not [defendant] could have been involved or could have possibly been a witness to the disturbance would allow for the officer to request that the two persons leaving the specific apartment be detained and their identification provided."

The trial court continued:  "The detention appears to have been in a reasonable length of time, and then once the officer determined that the defendant was searchable under either his—under his probation conditions, the search of the defendant's person and duffle bag is justified.  There's additional justification based on the defendant's demeanor, that being fidgeting [*sic*] and suspicion that he was under the influence.  So the Court is denying the motion to suppress."

During jury selection, defendant renewed the motion to suppress, offering new video from a body camera worn by Officer Larson.  In the video, a man and woman can be seen leaving an apartment as Sergeant Reinbold prepares to knock.  Reinbold can be heard asking, "You guys live here?"  The woman (Gaccol) responds, "No," and defendant says, "Just stop by to visit ."  Larson then says, "Go ahead and relax for a little bit . . . until we can figure out."  Reinbold completes Larson's sentence, saying, ". . . trying to figure out who was yelling at who."

On the video, Sergeant Reinbold can be seen speaking to the occupants of Castro's apartment for approximately two minutes and 30 seconds.  He then turns to defendant and Gaccol, and asks whether they are on probation.  Defendant responds in the affirmative, and Reinbold calls dispatch.

4

The trial court (Candela, J.) reviewed the transcript of the preliminary hearing and video and denied the motion, stating: "All right. I now had a chance to review [the video]. And I'll just confirm my ruling denying the 1538.5. I do find that as Judge Lucena did, and I'll adopt her findings as well that there was reasonable suspicion to detain. It was also probable cause to arrest the defendant for being under the influence, and they could search him pursuant to that. [¶] In addition and separate [to] the probation condition, which the defendant did tell the officers prior to the search, they knew about that. I don't find this to be arbitrary, capricious in any way. The officers suspected he was under the influence of a controlled substance, and they searched him. So that cannot be deemed arbitrary, capricious. So the 1538.5 is, again, denied."

The next day, the trial court issued a written order denying defendant's motion. The order states, in pertinent part:

"As previously found by the court, the police had a reasonable suspicion to detain the defendant. The detention was not prolonged, and it developed into probable cause to arrest. The officers in this case had probable cause to suspect defendant was under the influence of a controlled substance in violation of Health & Safety Code § 11550. . . . Under those circumstances the police are permitted to search defendant incident to arrest. It is irrelevant whether the search occurs before, during, or after the formal act of an arrest. *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1239-1240.

"[¶] . . . [¶]

"Separate and apart from the right to search incident to arrest, the officers knew defendant was on searchable probation *prior to* searching him. . . . This is an independent ground which also [legally] justifies the search in this case. Nothing contained in the evidence presented at the hearing suggests the probation search was done arbitrarily, capriciously, or to harass the defendant. See *People v. Bravo* (1987) 43 Cal.3d 600. In fact the evidence shows the opposite is true. The probation search in this case was conducted for very specific and very understandable reasons. The officers

5

suspected defendant of being under the influence of drugs. The court finds that the probation search was not arbitrary, capricious nor done to harass the defendant."

The matter proceeded to trial. The jury found defendant guilty of possession of a controlled substance for sale. In a bifurcated proceeding, the trial court found the prior prison term allegations true. Defendant was sentenced to an aggregate term of six years eight months, comprised of the upper term of three years, with three consecutive one-year terms for the prior prison term enhancements, plus a consecutive eight-month sentence for a separate case (Butte County case No. CM035798) in which defendant's probation was revoked.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress evidence. He contends he was illegally detained without reasonable suspicion, in violation of the Fourth Amendment. The People concede that defendant was detained, but contend the detention was supported by a reasonable suspicion of criminal activity. In the alternative, the People contend the search was authorized by defendant's demeanor and probation search condition.

We conclude Officer Larson lacked a reasonable basis to detain defendant, but the taint of the unlawful detention was attenuated by defendant's probation status.

I.

*Standard of Review*

"Where, as here, a motion to suppress is submitted to the superior court on the preliminary hearing transcript, 'the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness.' [Citation.] 'We exercise our independent

judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment. [Citation.]' " (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.) "The trial court's ruling may be affirmed if it was correct on any theory, even if we conclude the court was incorrect in its reasoning." (*People v. Durant* (2012) 205 Cal.App.4th 57, 62 (*Durant*).)

II.

*Analysis*

The Fourth Amendment prohibits unreasonable detentions of persons by law enforcement. (*Terry v. Ohio* (1968) 392 U.S. 1, 19; *People v. Celis* (2004) 33 Cal.4th 667, 673.) Generally, a person is detained when the conduct of a law enforcement officer, whether by means of physical force or show of authority, makes a reasonable person feel as though he or she is not free to leave. (*People v. Rios* (2011) 193 Cal.App.4th 584, 592.) A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considering the totality of the circumstances, reasonably justify an objective conclusion that the person detained may be involved in criminal activity. (*People v. Souza* (1994) 9 Cal.4th 224, 231.) The specific and articulable facts must cause a reasonable police officer, in a like position, drawing on his or her training and experience, to believe activity relating to crime has taken place, is occurring or is about to occur, and the person he or she intends to detain is involved in that activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 893 (*Tony C.*).) By contrast, "an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*Ibid.*)

The Fourth Amendment does not apply to all police encounters with citizens. In *Tony C.*, our Supreme Court explained: "If the individual is stopped or detained because the officer suspects he may be personally involved in some criminal activity, his Fourth Amendment rights are implicated and he is entitled to the safeguards of the rules set forth above. But similar safeguards are not required if the officer acts for other proper reasons.

7

Such reasons are obviously too many and varied to recite, but they may be grouped in at least two general categories: (1) the officer may wish to question the person not as a suspect but merely as a witness to a crime, or (2) the officer may be engaged in one of 'those innumerable miscellaneous tasks which society calls upon police to do which have nothing to do with the detection of crime' [citation], such as giving aid to persons in distress, mediating domestic quarrels, assisting the elderly or the disabled, furnishing traffic advice or directions, and generally preserving the peace and protecting persons from harm or annoyance." (*Tony C., supra,* 21 Cal.3d at pp. 895-896; see also *In re Manuel G.* (1997) 16 Cal.4th 805, 824 ["If an officer wishes 'to question the person not as a suspect but merely as a witness to a crime,' no detention has occurred"]; see *Batts v. Superior Court* (1972) 23 Cal.App.3d 435, 438-439 [offering examples of police interventions that do not implicate Fourth Amendment rights].)

There is nothing in the record to suggest that Officer Larson suspected defendant of being involved in criminal activity at the time of their initial encounter. Indeed, there is nothing to suggest that Larson believed a crime was occurring, had occurred, or was about to occur. Instead, the record suggests that Larson was engaged in "one of 'those innumerable miscellaneous tasks which society calls upon police to do which have nothing to do with the detection of crime,' " namely, mediating a dispute between an apartment manager and tenant. (*Tony C., supra,* 21 Cal.3d at pp. 895-896.)

Although Larson does not appear to have been pursuing criminal activity when she first encountered defendant, both parties assume the encounter implicated defendant's Fourth Amendment rights. In the absence of any argument or analysis by the parties, we likewise assume that the Fourth Amendment applies. We further conclude that Larson lacked a reasonable suspicion of criminal activity. Having so concluded, we next consider whether the taint was attenuated by defendant's probation status.

We begin our attenuation analysis with *People v. Brendlin* (2008) 45 Cal.4th 262 (*Brendlin*). In *Brendlin,* an officer performed an unlawful traffic stop. (*Id.* at p. 268.) The officer asked the defendant, a passenger, to identify himself. The defendant

complied, and the officer discovered the defendant had an outstanding arrest warrant. (*Id.* at pp. 265-266.) The officer then arrested the defendant and, in a search incident to arrest, found materials used for manufacturing methamphetamine in the backseat of the car. (*Id.* at p. 266.) The defendant filed a motion to suppress, which was denied, and then pleaded guilty to the manufacture of methamphetamine. (*Ibid.*) On appeal, the issue was "whether the existence of defendant's outstanding arrest warrant—which was discovered *after* the unlawful traffic stop but *before* the search of his person or the vehicle—dissipated the taint of the illegal seizure and rendered suppression of the evidence seized unnecessary." (*Id.* at p. 267.)

The *Brendlin* court applied a three factor test derived from *Brown v. Illinois* (1975) 422 U.S. 590, 603-604 (the *Brown* factors) to determine whether the taint had been attenuated: "the temporal proximity of the unlawful seizure to the subsequent search of the defendant's person or vehicle, the presence of intervening circumstances, and the flagrancy of the official misconduct in effecting the unlawful seizure." (*Brendlin, supra,* 45 Cal.4th at p. 269.)

The *Brendlin* court held the first *Brown* factor—temporal proximity—was largely irrelevant because the officer's discovery of the arrest warrant did not depend on the defendant's conduct. (*Brendlin, supra,* 45 Cal.4th at p. 270.) By contrast, in cases where the intervening factor "was a volitional act by the defendant, such as resisting arrest or flight," "the temporal proximity between the illegal police conduct and the defendant's response has a logical connection in that the closer these two events are in time, the more likely the defendant's response was influenced by the illegality or that the illegality was exploited." (*Ibid.*)

With respect to the second *Brown* factor—intervening circumstances—the *Brendlin* court held the warrant "supplied legal authorization to arrest defendant that was completely independent of the circumstances that led the officer to initiate the traffic stop." (*Brendlin, supra,* 45 Cal.4th at p. 271.) "The challenged evidence was thus the

9

fruit of the outstanding warrant, and was not obtained through exploitation of the unlawful traffic stop." (*Ibid*.)

With respect to the third *Brown* factor—flagrancy of the official misconduct—the *Brendlin* court found no evidence of police misconduct or bad faith, noting "a mere 'mistake' with respect to the enforcement of our traffic laws does not establish that the traffic stop was pretextual or in bad faith." (*Brendlin*, *supra,* 45 Cal.4th at p. 271.) Accordingly, the court concluded the defendant's outstanding arrest warrant "sufficiently attenuated the connection between the unlawful traffic stop and the subsequent discovery of the drug paraphernalia." (*Id.* at p. 272.)

The First District Court of Appeal applied *Brendlin*'s attenuation analysis to a different intervening circumstance—a probation search condition—in *Durant*. In *Durant*, an officer conducted a traffic stop after the defendant made a left turn from a dedicated left turn lane without activating his turn signal. (*Durant, supra,* 205 Cal.App.4th at p. 61.) It was not until after the officer activated his patrol car lights that his fellow officer reminded him that the defendant was on probation. (*Ibid.*) In response to the officer's questioning, the defendant admitted that he was on probation and consented to a patdown search. (*Ibid.*) The officer searched the defendant and found a loaded handgun in his waistband. (*Ibid.*) The defendant brought a motion to suppress, arguing the traffic stop was unlawful because he did not break any laws by turning without signaling. (*Ibid.*) The trial court denied the motion, and the Court of Appeal affirmed. (*Id.* at p. 57.)

On appeal, the court noted the defendant's left turn was not illegal, but the court did not reach the question of whether the traffic stop was unconstitutional. (*Durant, supra,* 205 Cal.App.4th at p. 64.) Instead, the court decided that, even assuming the traffic stop was illegal, the defendant's probation search condition attenuated any taint. (*Ibid.*)

The *Durant* court began by observing that, "Probationers in California typically consent in advance to warrantless searches as a condition of probation, in exchange for

10

the opportunity to avoid a prison sentence. [Citation.] Such consent operates as a ' "complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner." ' [Citation.] Because a probationer subject to a search condition lacks a reasonable expectation of traditional Fourth Amendment protections, a police officer may search him or her without any reasonable suspicion of criminal activity, so long as the search is not undertaken for harassment or for arbitrary or capricious reasons or in an unreasonable manner. [Citation.]" (*Durant, supra,* 205 Cal.App.4th at p. 64.)

The *Durant* court then applied the attenuation analysis set forth in *Brendlin*, focusing on the second factor, intervening circumstances. (*Durant, supra,* 205 Cal.App.4th at p. 66.) "Although the patdown search and discovery of the gun occurred shortly after the traffic detention," the court explained, "they did not occur until after [the officer] had recognized [the defendant] as a person subject to a search condition." (*Ibid.*) Accordingly, the court concluded, "[t]he search condition supplied legal authorization to search that was completely independent of the circumstances leading to the traffic stop." (*Ibid.*) With respect to the third factor, the court further observed that there was no evidence of "flagrancy or purposefulness to the alleged unlawful conduct by [the officer]—though the trial court found that the traffic stop was made without reasonable suspicion, it specifically found [the officer] did not act in an arbitrary, capricious, or harassing manner." (*Ibid.*) Accordingly, the court affirmed the denial of the defendant's motion to suppress.

The Sixth District Court of Appeal reached a different result in *People v. Bates* (2013) 222 Cal.App.4th 60 (*Bates*). In *Bates*, an officer investigating a robbery was aware that a felony probationer matching the suspect's description lived in a nearby apartment complex and sometimes drove a gold van. (*Id.* at p. 63.) The officer went to the apartment complex to watch for the van. (*Ibid.*) Two hours later, the officer stopped a tan car leaving an adjacent mobilehome park. (*Id.* at pp. 63-64.) At the time of the stop, the officer did not have any information suggesting that any of the occupants of the

11

tan car were involved in the robbery.  (*Ibid*.)  After the stop, the officer discovered that one of the passengers was the suspect he was looking for.  (*Id.* at p. 64.)  The ensuing search revealed incriminating evidence.  (*Ibid.*)

The *Bates* court found the initial stop unlawful, and then turned to the question whether the taint was attenuated by the defendant's probation search condition.  (*Bates, supra,* 222 Cal.App.4th at p. 69.)  The *Bates* court declined to follow *Durant,* noting that: "The *Durant* court's intervening circumstances analysis proceeds on the implicit assumption that a probation search condition is the same as the arrest warrant present in *People v. Brendlin.*  In the case of an arrest warrant, officers essentially have a duty to arrest an individual once the outstanding warrant is confirmed.  [Citations.]  A probation search condition, on the other hand, is a discretionary enforcement tool and therefore a less compelling intervening circumstance than an arrest warrant."  (*Bates, supra,* at p. 70.)

The *Bates* court explained, "We are not comfortable applying *Durant* to the facts here, as doing so would open the door to random vehicle detentions for the purpose of locating probationers having search conditions."  (*Bates, supra,* 222 Cal.App.4th at p. 70.)  The court went on to observe that the third factor, flagrancy and purposefulness of police misconduct, " 'is considered the most important because it is tied directly to the rationale underlying the exclusionary rule, deterrence of police misconduct.'  [Citation.]  Bad faith need not be shown for police misconduct to be purposeful.  Instead, this factor is met 'when officers unlawfully seize a defendant "in the hope that something might turn up." ' [Citation.]"  (*Id.* at pp. 70-71.)  Applying this factor, the court explained, "Unlike the officer in *Durant*, who stopped a car based on a perceived traffic violation, [the officer] stopped the tan car without any observation of possible wrongdoing. . . .  Though we do not suggest [the officer] acted in bad faith, we find his suspicionless stop of the tan car nonetheless purposeful for our attenuation analysis."  (*Bates, supra,* at p. 71.)  Accordingly, the court concluded the defendant's motion to suppress should have been granted.  (*Ibid.*)

Having reviewed the applicable authorities, we now apply the *Brown/Brendlin* factors to our facts. With respect to the first factor, temporal proximity, Officer Larson and Sergeant Reinbold searched defendant within minutes of their initial contact. Although closeness in time between the stop and search generally operates in favor of exclusion, temporal proximity is "most relevant when the alleged attenuating factor was a volitional act by the defendant, such as resisting arrest or flight, because in such cases a brief lapse of time makes it more likely the search was the product of the detention itself." (*Durant, supra,* 205 Cal.App.4th at p. 65.) Temporal proximity is less significant where, as here, the intervening circumstance is something other than a volitional act by the defendant. (See *Brendlin, supra,* 45 Cal.4th at p. 270 [outstanding arrest warrant]; *Duran, supra,* at p. 66 [probation with search terms].) Accordingly, we conclude the first factor is not dispositive.

With respect to the second factor, we conclude that defendant's probation status constitutes an adequate intervening circumstance under the facts of this case. We recognize that a probation search condition is "a discretionary enforcement tool" and arguably, "a less compelling intervening circumstance than an arrest warrant." (*Bates, supra,* 222 Cal.App.4th at p. 70.) Nevertheless, defendant's probationary status was "completely independent of the circumstances leading to" his detention (*Durant, supra,* 205 Cal.App.4th at p. 66), and therefore sufficient to break the causal connection between the unlawful detention and search. We therefore conclude that the second *Brown* factor favors admission of the evidence.

Finally, we conclude that the third *Brown* factor—flagrancy and purposefulness of the police misconduct—also favors admission of the evidence. The *Brendlin* court regarded the third factor as "the most important because 'it is directly tied to the purpose of the exclusionary rule—deterring police misconduct.' " (*Brendlin, supra,* 45 Cal.4th at p. 271.) Here, there is nothing in the record to suggest that Officer Larson engaged in misconduct. Nothing suggests the detention was pretextual or made in bad faith. Rather, the record suggests that Larson was merely trying to determine whether defendant was

13

involved in the disturbance that precipitated the 911 call. Although Larson may have detained defendant without reasonable suspicion, there is nothing to suggest that she acted in an arbitrary, capricious, or harassing manner. To the contrary, the trial court expressly found that she did not. We therefore conclude that the third *Brown* factor favors admission of the evidence.

On the facts before us, we conclude that defendant's probation status adequately attenuated the taint of the unlawful detention so that the evidence obtained in the search was not inadmissible as "fruit of the poisonous tree." (*Durant, supra,* 205 Cal.App.4th at pp. 64-65.) Having so concluded, we need not consider whether defendant's demeanor independently justified the search. Because we affirm the judgment, we necessarily decline defendant's invitation to reverse the trial court's finding that he violated probation in case No. CM035798.

## DISPOSITION

The judgment is affirmed.


 RENNER                       , J.


We concur:


 NICHOLSON            , Acting P. J.


 MAURO                , J.


14